CITY OF JERSEY CITY, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PROSECUTOR, v. STATE DEPARTMENT OF TAXATION AND FINANCE, DIVISION OF TAX APPEALS, SHELTON PITNEY AND WALTER P. GARDNER, TRUSTEES OF THE PROPERTY OF THE CENTRAL RAILROAD COMPANY OF NEW JERSEY, AND HOMER C. ZINK, DIRECTOR OF THE DEPARTMENT OF TAXATION AND FINANCE, RESPONDENTS.

SHELTON PITNEY AND WALTER P. GARDNER, TRUSTEES OF THE PROPERTY OF THE CENTRAL RAILROAD COMPANY OF NEW JERSEY, PROSECUTORS, v. CITY OF JERSEY CITY, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, STATE DEPARTMENT OF TAXATION AND FINANCE, DIVISION OF TAX APPEALS, AND HOMER C. ZINK, DIRECTOR OF THE DEPARTMENT OF TAXATION AND FINANCE, RESPONDENTS.

Submitted January 22, 1947—Decided January 6, 1948.

Before Justices BODINE, WACHENFELD and BURLING.

For Jersey City, *Charles A. Rooney* (*John J. Meehan,* of counsel).

For Shelton Pitney and Walter P. Gardner, trustees of the Central Railroad Company of New Jersey, *Nugent & Rollenhagen* and *William F. Hanlon* (*John P. Nugent,* of counsel).

The opinion of the court was delivered by

WACHENFELD, J. This is a tax assessment case involving three separate lots in the Jersey City terminal of the Central Railroad Company of New Jersey designated by the city as

22 J North (Block 2154), 48 F (Block 2145) and 49 C (Block 2145). The assessments of the first two properties are for the years 1936 through 1941 and of the third, for 1937 through 1941. The County Board affirmed the city's assessments but the State Division of Tax Appeals made reductions. Both the city and the railroad obtained separate writs of *certiorari*, which have been consolidated. The State of New Jersey has neither appeared nor filed a brief in these proceedings.

Lot 22 J North lies back of Ellis Island in the Jersey City terminal yard of the railroad, with a frontage on the Hudson River. It consists of 91.219 acres, of which approximately 25 acres are under water. It has a uniform width of 1,107 feet. The upland portion, filled and bulkheaded, is vacant except for stock pens, railroad coal storage dumps and a few railroad tracks, which serve the bulkhead. A small pier is used to load livestock on lighters, while empty coal barges are anchored in the basin for loading at the coal pier on the adjoining property. The waterfront is not safe for the accommodation of ocean-going vessels due to a rock ridge in the channel approach while the only land approach is by way of a private dirt road which crosses the terminal yard tracks of the railroad.

Lot 48 F is also waterfront property located in the Jersey City terminal yard of the railroad and lies about 1,500 feet north of Lot 22 J North. It contains 20.95 acres, of which approximately 14 acres are under water. The portion under water is 300 feet wide, supporting a long, old wooden coal pier. The upland tapers to a point and is completely covered and surrounded by yard tracks. The lot has direct access to the main channel of the Hudson River but there is no access from the land side except over the railroad tracks. For many years this property was leased to a coal company and for 1936 to 1940, when the lease terminated, the rental was $13,000 per year.

Lot 49 C is located near the railroad passenger station on Johnston Drive, a private roadway in the railroad yards. It comprises 2.617 acres and has a frontage on the paved drive of over 1,000 feet and a uniform depth of 100. It has no

waterfront. The land is occupied as a coal yard with a trestle and concrete coal pockets. There are several structures on the lot, including a two-story brick office building. The land was leased to Burns Brothers for many years, until 1940, at $20,000 a year. Since 1942 it has been leased again to them but at half that rental.

The city assessed 22 J North for each of the years from 1936 through 1941 at $32,500 per acre, which was reduced by the State Board to $25,000. 48 F was assessed by the city for the same period at $65,000 per acre and the State Board reduced the assessment to $40,000. The assessment of 49 C for the years from 1937 through 1941 was $74,000 per acre and there also the State Board reduced the valuation to $50,000.

For the year 1942 the assessment of these three properties was judicially determined in *State* v. *State Board of Tax Appeals,* 134 *N. J. L.* 34; *affirmed,* 135 *Id.* 481 and 482, as follows: 22 J North, $32,500 per acre; 48 F, $45,000 per acre; and 49 C, $56,700 per acre.

This case necessitates a factual determination of the true value of the properties concerned. In reaching a valuation of railroad property the factors to be considered have been set forth in *Central Railroad Co.* v. *Thayer-Martin,* 114 *N. J. L.* 69, 75:

"The true value of railroad property is not determined solely by cost of acquisition of land, by cost of improvements and personal property, less depreciation, or reproduction cost less depreciation but is based upon a consideration of many elements, such as the statutory returns made by railroad companies showing the cost and true value of their property as determined by them, a personal examination and investigation of the property, consideration of its physical conditions, usability and location and its proximity to large cities for transportation of freight and passengers and to industrial manufacturing and mining centers, pleasure resorts and ocean and river termini. In valuing structures and tangible personal property, additional elements are frequently considered, namely: cost, or reproduction cost, less depreciation, obsolescence and other elements not reflected in the physical value.

All these elements are considered in connection with the railroad as a going concern."

The court in *State* v. *State Board of Tax Appeals, supra* (at *p.* 43), added:

"This method further requires that consideration be given to the special value of water front lands used, as here, for railroad terminal purposes. In other words, the location of such lands, its availability for railroad use, the increment, if any, resulting because of the assemblage and consolidation of all the lands as an entirety, are to be considered in connection with the railroad as a going concern. The special value of the lands clothed with the aforestated factors and used accordingly for railroad terminal purposes, has long since received judicial recognition and approval."

Furthermore, the failure to operate at a profit is not in and of itself conclusive evidence that the assessment of its property is unreasonable, nor does it operate to relieve the railroad from paying its proportion of the public tax burden. *State* v. *State Board of Tax Appeals, supra.*

Both the city and the railroad relied primarily on expert witnesses, whose appraisals varied greatly. The city experts' valuations ranged from $40,000 to $55,000 per acre for lot 22 J North, $60,000 to $70,000 per acre for lot 48 F, and $80,000 to $87,120 per acre for lot 49 C. The railroad experts' valuations were from $12,000 to $15,000 per acre for lot 22 J North, $15,000 to $18,000 per acre for lot 48 F, and $37,500 to $40,000 per acre for lot 49 C, with declining valuations during the assessment period.

The witnesses appearing on behalf of the railroad based their appraisals mainly on certain sales and abandonments of property in the waterfront area, and in their opinion there was a general decline in the true value of these waterfront properties. They did not believe the availability for railroad purposes appreciably enhanced the value of the properties herein concerned.

The abandonments relied upon in these appraisals were of excess, unimproved lands never actually put to railroad use. In certain instances the abandonments were made to sustain losses for income tax deduction purposes and in one case with

knowledge that the federal government would subsequently purchase the property from the city and draw upon the facilities of the railroad making the abandonment. Considering the circumstances motivating the sales and abandonments, as well as physical comparison, location and general availability for railroad purposes, those properties were not comparable to the land presently involved. No waterfront properties in the Jersey City railroad terminals actually in railroad use have ever been sold.

The expert witnesses for the city considered those sales but their appraisals were based more broadly upon consideration of the properties' availability for, and utility as, a waterfront railroad terminal; the size, shape and area of the property; the character of the land; the access to the land by road, as well as by water; water depths, channel depths and location in the harbor; its assemblage into one integrated unit; and, finally, what the properties in their several opinions would sell for in their use and condition at private contract between a willing seller and a willing buyer, neither being under compulsion at the assessing date.

The evidence is persuasive that the highest and best use of these properties is for general railroad purposes. When considered as units of a connected whole appropriate to a railroad terminal, they have a greater value than as separate parcels for other or average business purposes. *Long Dock Co.* v. *State Board of Assessors,* 89 *N. J. L.* 108; *affirmed,* 90 *Id.* 701.

After a careful consideration of all the testimony and proof, an independent examination of the facts compels us to reach the conclusion that the reductions made by the Division of Tax Appeals were excessive and that for the years concerned the assessments should be as follows: 22 J North, $32,500 per acre; 48 F, $45,000 per acre; and 49 C, $56,700 per acre. These are the same valuations as determined for the year 1942 by the Court of Errors and Appeals in *State* v. *State Board of Tax Appeals, supra.* Although the assessments approved in that case by the court of last resort are for a subsequent year, they are given consideration because the factors determining valuation have remained substantially

unchanged. *Cf. Pitney et al.* v. *State Board of Tax Appeals,* 136 *N. J. L.* 157.

The assessments will be modified in accordance with this opinion but without costs.