BAUM REALTY CO., A CORPORATION, APPELLANT, V. BOARD OF EQUALIZATION WITHIN AND FOR DOUGLAS COUNTY, NEBRASKA, ET AL., APPELLEES.

100 N. W. 2d 730

Filed January 29, 1960. No. 34607.

*Kennedy, Holland, DeLacy & Svoboda* and *Robert A. Skochdopole*, for appellant.

*Eugene F. Fitzgerald, John J. Hanley*, and *John C. Burke*, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

The issue on this appeal is the basic value of real estate in the city of Omaha, Douglas County, owned by appellant and correctly described in the record, for taxation purposes for the year 1956. The basic value assigned to the real estate for that year by the county assessor was $1,200,000. This was approved by the Douglas County Board of Equalization by denial of the complaint of appellant that the assessment was excessive and its request that the valuation of the real estate be reviewed and reduced by the board. The appeal therefrom by the owner to the district court for Douglas County resulted in a finding that the statutory formula for determining the basic value of property was not sufficiently observed; that the evidence did not sustain a basic value of the real estate of $1,200,000; that it was excessive in the amount of $163,000; and that the basic value of the property should be reduced by that

amount. The adjudication of the basic value of the real estate for the year 1956 for taxation purposes was the sum of $1,037,000. The motion of appellant for a new trial was denied and this appeal is a challenge of the correctness of the action of the district court.

The real estate involved is located at the southwest corner of the intersection of Sixteenth and Harney Streets in Omaha. Its dimensions are 132 feet from north to south on Sixteenth Street and 176 feet from east to west on Harney Street. A four-story brick building of mill construction and a basement occupies the area. It was constructed in 1900 or 1901 and faces east on Sixteenth Street. The real estate as a whole is generally referred to as the Kresge Building and it is given that designation herein. The building was designed for and was generally desirable only for retail merchandising business. The W. R. Bennett Company secured the ground at a cost of $150,000, erected the building thereon at an expense of $200,000, and conducted a department store there for several years with unfavorable results. Persons interested in the Baum company acquired the Bennett company and refinanced and operated the department store in the building for a period of time without satisfactory results. The store business was discontinued but the Baum company has since owned and managed the Kresge Building.

It was leased and occupied 2 years by Orkin Brothers Company for a net rental of $50,000 a year. The lessee failed and Burgess-Nash Company became a tenant of the building at the same rental for the first 3 months and thereafter at a rental of $72,000 a year. This tenancy continued for 3 years to about the end of 1924 when the lease was terminated because of financial difficulty of the lessee.

The net rental from the Kresge Building commencing with 1922 and continuing through 1927 was $72,000 a year. From the latter date until the Kresge company lease terminated in the month of July 1955 the net

rental therefrom was $80,000 a year except for the period from 1933 to 1945 the net rental was $82,500 a year. The owner of the property during these periods had no expenditure for real estate taxes, insurance, and expense of maintenance of the building. Thereafter the first floor of the building and the basement, except the part of the first floor leased to the Carman Store hereafter described, were, commencing July 31, 1955, leased to the Kresge company for a rental of $60,000 a year. The part of the first floor occupied by the Carman Store was a space with a 28-foot frontage and a depth of 100 feet. The rental therefor was $24,000 a year. Each of these leases provided for additional rent if the gross sales of the respective tenants exceeded a designated yearly minimum which was never realized. The sales of the Kresge company were $135,000 less in 1957 than they were in 1956 and the volume of their sales has continued to decrease. The Kresge lease may be terminated at the end of each 5-year period and this may be done in July 1960. The business of the Carman Store decreased to the extent that it was operating at a loss because of which it retired from business. The space it occupied in the building became vacant and was in that condition at the time of the trial. It cannot, according to the evidence, be rented for more than about half of what the Carman Store paid for its use. The third and fourth floors were rented to Kelley Bowling Alleys for $22,000 a year. That tenant moved out of the building but made a sublease the terms of which are not shown by the record. The second floor of the building had been for a considerable time and was at the time of the trial vacant. The rental provided by the three leases last mentioned was gross and the owner had to pay the expenses of maintaining and operating the building except the cost of any inside decorating done. The tenants paid this expense.

The gross income of the Kresge Building for the year 1956 was $106,000 and the net income was only $42,362.

The taxes thereon on the basis of the 1956 assessment which is in issue on this appeal are $36,300, about 34 percent of the annual gross income from the building or an amount about equal to the gross rent from the building for 4 months. Comparisons made at the trial in these respects of somewhat similar properties in the vicinity of the Kresge Building showed results substantially and uniformly unfavorable to the latter property.

There was evidence to the effect that the most valuable real estate in the retail area of downtown Omaha is on Sixteenth Street south from Douglas Street to Farnam Street and that the center of that area is considered to be Sixteenth and Farnam Streets. The value of the land from Farnam Street south on Sixteenth Street decreases and the value of the land on which the Kresge Building is located is about 50 to 60 percent of the value of the land at Sixteenth and Farnam Streets. The Kresge Building is on the south fringe of the retail area.

A count of the traffic has been made once each year at about the identical date for 2 hours both in the morning and afternoon since 1926 by checkers stationed in about the middle of the blocks to count the traffic passing the locations of the checkers during the period when the count is being made. A record is made and kept of the result of the traffic count. This activity is sponsored jointly by the Omaha Real Estate Board and the Building Owners and Managers Association. The traffic counts over a period of years are considered valuable in determining the value of real estate for rental purposes. In 1952 the traffic count from Douglas Street to Farnam Street on Sixteenth Street was 13,643 and was about the same until 1954. Thereafter, in 1956, it was 11,924. From Farnam Street to Harney Street on Sixteenth Street in that period the count decreased from 11,635 to 7,903. From Harney Street to Howard Street on Sixteenth Street in that period the count decreased

from 6,771 to 5,912. Each traffic count is given a number indicating the place where taken and the standing thereof in relation to other places. No. 1 is from Douglas Street to Farnam Street on Sixteenth Street and No. 6 is from Harney Street to Howard Street on Sixteenth Street. Howard Street is the first one south of Harney Street and is immediately south of the block in which the Kresge Building is located.

A survey was made by the Building Owners and Managers Association of Omaha in 1954 concerning the vacancy situation in downtown offices of 22 buildings. The vacancies were then found to be a fraction of 1 percent. In 1955 the vacancies had increased to about $2\frac{1}{2}$ percent and in 1956 vacancies amounted to 7.9 percent. This affects the value of the Kresge Building because the persons who were engaged, employed, or had business in the vacated offices ceased to come downtown, and shopping was materially diminished. It also indicated that the development of suburban areas has been very effective in decreasing the occupancy of downtown buildings. The Aquila Court Building on the northeast corner of Sixteenth and Howard Streets, a half-block south of the Kresge Building, had been vacant for about 9 months at the time of the trial of this case.

The Kresge Building is not constructed or in condition to produce at the present time a maximum or satisfactory income. It is obsolescent. It has been used for more than half a century. The floor of each story is in very bad condition. There is more unevenness and distortion of the floor of each story from the first to and including the fourth story. There is not much difference in the floors but there is always a worse condition on the upper floors of an old building than on the lower floors because as the building settles or sags, the undesirable condition of the floors becomes more apparent on the higher levels.

The elevator arrangement of the building is very un-

satisfactory. It is necessary on the Sixteenth Street side to go through one of the stores to get to any of the floors above the first story. The elevator for the second, third, and fourth floors on the Harney Street side is at the extreme west part of the building. The evidence is that the Kresge Building is obsolete and not properly usable for the location and ground it occupies. It is an outmoded, old-style structure with extremely high ceilings which have no utility or value for retail business and they do have disadvantages. The physical condition of the building is very bad. The hallways and the walls are in unsatisfactory condition. There are large open areas in the building which are not appropriate for or desired by present tenants. It is very difficult to have such a building produce an advantageous sum of money that will pay a fair return on what may be termed the depreciated physical value of the building. The cost of redeveloping and remodeling the building to make it desirable would be so great as to make it uneconomical to attempt it. It was the expressed opinion of an expert that the building is functionally and physically obsolete.

Appellant has owned the Kresge Building since 1922. The president of appellant testified that he had kept the accounts concerning the building for more than 25 years and that he had been active in the management and rental of it and other property of the company for more than 20 years. He was and had been for more than 25 years fully advised as to the value, sales, and leases of real estate in downtown Omaha. He properly qualified as a witness as to the value of the real estate involved in this litigation. He testified that the basic value of the Kresge Building at the time important to this case was $640,000. He said he considered, in arriving at this conclusion, the income of the property; a comparison of it with other comparable properties; the relative location of the building as compared with other

properties; and the desirability of the building as far as tenants, actual and prospective, were concerned.

The testimony of Edwin Bedford was as follows: He had been in the real estate business for 48 years and had specialized in making appraisals of property for about 22 years. He was engaged as a realtor in general real estate brokerage and appraisal work and had been since 1926 a member of the firm of Stuht-Bedford of Omaha. He was and had been for many years a member of and active in the activities of the National Association of Real Estate Boards and was one of its principal officers during the year 1948. He was for many years a member of the American Institute of Real Estate Appraisers and was one of its principal officers for 3 terms. He was a member of the Omaha Real Estate Board and was its president in 1936. He was an approved appraiser for the General Service Administration, United States Government, as to all kinds of real estate, including industrial and commercial properties. He appraised and developed reports in 1942 and 1943 for the Corps of Engineers of the United States of all leased properties in the Missouri River Division from Great Falls, Montana, to St. Louis, Missouri. He had appraised many properties in Omaha, including the Woodmen of the World Building, the City National Bank Building, the Hill Hotel, the Paxton Block known as the Goldstein-Chapman Building, and the Omaha Athletic Club. He was engaged by appellant in 1956 to and he did appraise the Kresge Building. In appraising it and forming an opinion of its value he took into consideration the earning capacity of the Kresge Building, its relative location in relation to the central business district, its desirability and functional use, its reproduction cost less depreciation, and comparisons with other properties of known or recognized value. He testified that in his opinion the market or actual value of the Kresge Building at the time important to

this case was $690,000, consisting of $460,000 for the land and $230,000 for the improvements.

Alexander D. Frank, vice president of the H. A. Wolf Company of Omaha, stated: He had been with the company for 32 years, had been engaged in appraisal work for 12 years, and before that he had been in the sales and loan department of the company. He was a member of the American Institute of Real Estate Appraisers and president of the Nebraska chapter of it in 1957. He was presently a member of its board of directors. He was a member of the National Association of Real Estate Boards, Omaha and Lincoln Real Estate Board, Mortgage Bankers Association, and Brokers Institute. He had appraised many properties in downtown and suburban Omaha, among others, the Securities Building, Brandeis Theatre Building, World Insurance Building, Redick Tower, and United Benefit Insurance Building. H. A. Wolf Company is the owner and manager of many properties in downtown and other areas of Omaha. The witness was in charge of its real estate sales and real estate loan and appraisal departments. He made an examination and appraisal of the Kresge Building at the request of appellant. He included in his investigation and consideration of the value of the building its earning capacity, its relative location, its desirability and functional use, its reproductive cost less depreciation, and a comparison of it with other properties of known and recognized value. His judgment of the value of the Kresge Building was $620,436, consisting of the value of the land as $462,000 and the value of the building on the land as $158,436. He spoke of this as market value but corrected that by saying that it was an error and that he intended to say basic value.

The single witness examined by appellees was the Douglas County assessor who testified as to the location, area of the land, and generally as to the size of the building constituting the property involved in this case and designated as the Kresge Building. He said he in-

spected it and also that he assessed it March 1, 1956, but when he was asked the method and means used in making the assessment of the property he said that he made the assessment of the Kresge Building on the same basis according to the statutory provisions that all other property in Douglas County was made, but he did not want the court to believe that he made the assessment personally. It was later in his examination established that the inspection of the building made by the county assessor mentioned above was made 2 weeks before the trial of this case in the district court which was held on May 28 and 29, 1958, more than 2 years after the date of the assessment. The witness did not identify the person who made the assessment of the property involved and he was not otherwise identified or presented at the trial. The record shows nothing more definite than that the valuation of the property was fixed by some member of the staff in the office of the county assessor. There is no competent evidence as to what was considered as a basis of the 1956 assessment of the Kresge Building. It is significant, however, that the county assessor testified that he presumed the property had the same assessed value in 1956 that it had in 1955. If the evidence discloses that the value of real estate for assessment purposes was arbitrarily determined without explanation of the method used or elements considered, the value thus fixed is not supported by competent evidence and is legally erroneous. Matzke v. Board of Equalization, 167 Neb. 875, 95 N. W. 2d 61; Adams v. Board of Equalization, 168 Neb. 286, 95 N. W. 2d 627.

The Douglas County Board by resolution of June 25, 1956, designated the ratio of basic value of property in the county as 70 percent of the actual or market value.

The trial of this appeal is de novo as an equitable proceeding. Adams v. Board of Equalization, *supra.*

Generally the valuation of property made by the assessor for taxation purposes is presumed to be cor-

rect; but if he does not make a personal inspection of the property or does not act upon his own information and judgment, this presumption does not obtain. There is no presumption under the circumstances of this case that the valuation of the Kresge Building for taxation purposes for the year 1956 was correct. In such a situation the basic value of the property is one of fact to be determined from the evidence, unaided by presumption, and the burden is on appellant to establish that the assessment is excessive. Adams v. Board of Equalization, *supra;* Omaha Paxton Hotel Co. v. Board of Equalization, 167 Neb. 231, 92 N. W. 2d 537.

It is presumed that a board of equalization has properly performed its official duties and that in making an assessment of property for tax purposes it acted upon sufficient legal evidence to justify its action. However, the presumption disappears if there is evidence on appeal to the contrary and thereafter the reasonableness of the assessment is one of fact to be determined by the evidence, with the burden on the contesting party to establish that an excessive valuation has been placed on the property, the subject of the controversy. Adams v. Board of Equalization, *supra.*

The statute which required that all real property in the state, not exempt therefrom, should be subject to taxation at its basic value, and should be assessed at 50 percent of such basic value, and that the assessed value should be its taxable value, is applicable to this litigation. § 77-201, R. S. Supp., 1955. Section 77-112, R. S. Supp., 1955, is relevant to this case. It provides: "Basic value shall mean the value of property for taxation that is ascertained by using the following formula where applicable: (1) Earning capacity of the property; (2) relative location; (3) desirability and functional use; (4) reproduction cost less depreciation; and (5) comparison with other properties of known or recognized value." Basic value was made 70 percent of

actual or market value in Douglas County for the year 1956 by resolution of the county board.

Appellant had the burden of establishing prima facie the basic value of the real estate involved. Appellees introduced no competent proof as to the basic value of the property. In this condition of the record the facts which the evidence on behalf of appellant tended to prove will be considered established for the purpose of a prima facie case in its favor. Aurora Hotel, Inc. v. Board of Equalization, 140 Neb. 511, 300 N. W. 419.

The finding of the district court that the basic value of the Kresge Building as shown by the assessment thereof for the year 1956 was excessive in the amount of $163,000 and that the assessment of the property should be reduced by that amount is not sustained by any evidence. That finding and the adjudication of the trial court based thereon are each incorrect. The basic value of the Kresge Building as of March 1, 1956, should be and it is determined to be the sum of $640,000.

The judgment should be and it is reversed and the cause is remanded with directions to the district court for Douglas County to render a judgment in this cause in harmony with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.

SIMMONS, C. J., not participating.