IN RE ASSESSMENT AND VALUATION OF UNION PACIFIC RAILROAD COMPANY.

UNION PACIFIC RAILROAD COMPANY, APPELLANT, V. STATE BOARD OF EQUALIZATION AND ASSESSMENT OF THE STATE OF NEBRASKA, APPELLEE.

101 N. W. 2d 892

Filed March 18, 1960. No. 34715.

*F. J. Melia, James H. Anderson,* and *George C. Hold-rege,* for appellant.

*Clarence S. Beck,* Attorney General, and *Homer G. Hamilton,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This controversy concerns the assessment of the property of appellant in Nebraska by appellee for the purpose of all ad valorem taxes, except municipal taxes, for the year 1959. Appellant made a return or schedule of its property as of March 31, 1959, to appellee in all respects as required by the statute. § 77-603, R. R. S. 1943. Appellant appeared at a hearing before appellee on May 4, 1959, and evidence was produced relative to the value of its property. Appellee on July 15, 1959, found and determined that the actual value of the property of appellant in Nebraska subject to assessment for taxation purposes by appellee was $210,597,729 and it assessed the property, after deducting locally assessed property, at the sum of $70,015,144.

The complaint of appellant concerning the assessment made by appellee, in substance, alleged, in the respects necessary to be noted here, the following: The assessment was discriminatory, unreasonable, and unlawful. It was not based upon a valuation and assessment of 35 percent of actual value as provided by law but the assessment was not less than 47½ percent while all other tangible property subject to taxation in Nebraska, except railroad property, was assessed and taxed for 1959 at not to exceed 35 percent of its actual value. The basic value statute was amended in 1957 to provide that all tangible and real property in Nebraska should be valued at its actual value and should be assessed at 35 percent of such actual value. It was not available for taxation until 1958. In that year appellee resorted to the device of using a multiplying or conversion factor of 1.42, the use of which was erroneous and resulted in an assessment of appellant's property in the amount of not less than 47 percent of actual value. In 1959 appellee by use of such conversion factor assessed

the property of appellant in Nebraska at not less than 47½ percent of actual value; and because all other property than railroad property subject to assessment by appellee in 1959 was taxed at not to exceed 35 percent of actual value, the action of appellee in assessing the property of appellant resulted in an unjust, unlawful, and discriminatory taxation in violation of Article VIII, section 1, of the Constitution of Nebraska; it was a violation of the statute of Nebraska requiring all tangible and real property to be valued at 100 percent of its actual value and assessed at 35 percent of such value; and it violated the statute which provides that railroad property shall be assessed on the same basis as all other property. The actual value of the property of appellant in Nebraska within the jurisdiction of appellee for assessment in the year 1959 was not in excess of $155,-174,172 which at 35 percent thereof, after deducting locally assessed property found by appellee to be properly deductible, would have produced a lawfully assessed value of not to exceed $50,616,899. The prayer of the complaint was that the assessment made by appellee in the amount of $70,015,144 be set aside and that appellee find and determine the assessed value of the property of appellant in Nebraska to be the sum of $50,616,899.

A hearing was held by appellee on July 28, 1959, at which time additional evidence was introduced on behalf of appellant. Its complaint was that day denied and the original assessment of the property of appellant was affirmed by appellee. This appeal is a challenge of the legality of the recited actions of appellee.

The authority of this court in a proceeding of this character is by legislative mandate to hear and determine the matter in controversy de novo upon the record. § 77-617, R. R. S. 1943.

Appellee is charged with the obligation of assessing property of railroads and railroad corporations in the state except designated items outside of right-of-way

and depot grounds. § 77-601, R. R. S. 1943. The Legislature has not defined any method by which railroad property in the state shall be valued for taxation by appellee. The Legislature has directed that specified things shall be considered but it has not prescribed any definitive formula for ascertaining value. That is committed to the judgment and discretion of appellee to be exercised fairly within legal limitations and restrictions. Appellee may resort to any method by which a substantially just and correct determination of the value of such property can be reached if it includes consideration of the things which the statute requires.

This court in Chicago, R. I. & P. Ry. Co. v. State, 111 Neb. 362, 197 N. W. 114, remarked: "There are no settled or infallible rules for the ascertainment of the actual value of railroad property for the purpose of taxation. * * *" The opinion in that case states: "The subject of the valuation of railroads is a difficult one. Neither railroad commissioners, nor taxing authorities, nor courts have as yet arrived at settled or infallible rules or criteria for the ascertainment of actual value of such property."

In Great Northern Ry. Co. v. Weeks, 297 U. S. 135, 56 S. Ct. 426, 80 L. Ed. 532, it is said: "In determining the amount of the assessment the board was not bound by any formula, rule or method, but for guidance to right judgment it was free to consider all pertinent facts, estimates and forecasts and to give to them such weight as reasonably they might be deemed to have." See, also, State ex rel. Bee Building Co. v. Savage, 65 Neb. 714, 91 N. W. 716; Chicago, St. P., M. & O. Ry. Co. v. State Board of Equalization, 133 Neb. 640, 276 N. W. 391; Rowley v. Chicago & N. W. Ry. Co., 293 U. S. 102, 55 S. Ct. 55, 79 L. Ed. 222; Northern P. Ry. Co. v. State, 71 N. D. 93, 299 N. W. 696.

Appellant does not in this case contest the method adopted by appellee for ascertaining the 1959 value of the total operating property of appellant, that is $706,-

621,911 or the value of the part thereof in this state which is $155,174,171 as shown by sections I, II, and III of the assessment order of appellee. Appellant does contest the validity and legality of the increase of the last amount stated above to $210,597,729 by the method and process recited in section IV of the 1959 assessment order of appellee.

Appellee determined the actual value, referred to by it as system value, of the railroad property of appellant by a consideration of three factors: 5-year, 1954-1958, average value of the stocks and bonds; 5-year, 1954-1958, average of net operating income capitalized at 6 percent; and investment in transportation property less recorded depreciation. Each factor was given equal weight and this resulted in an average value of the railroad property of appellant of $706,621,911. This was the actual value of the railroad of appellant as determined by appellee. Appellee then decided the proportion or share of this value that should be allocated to Nebraska because of the part of the property of appellant therein. This was determined by a consideration of four factors referred to by appellee as allocation factors: Traffic units, gross earnings, car and locomotive miles, and current track mileage in Nebraska compared with the same factors in other states where the property of appellant is located. The component average of the four factors was 21.96 percent. This, applied to the actual value of the railroad as found by appellee of $706,621,911, produced $155,174,171. This was the actual value of the Nebraska property of appellant in 1959 subject to taxation as determined by appellee but it did not take 35 percent thereof. Instead it reduced that amount by 5 percent or to $147,415,462 and multiplied that figure by 1.4286 thereby increasing the amount to $210,597,729 and labeled it actual value. Appellee then took 35 percent of that amount or $73,-709,205, deducted the amount of the locally assessed property as found by appellee of $3,694,061, which re-

sulted in $70,015,144, and that was made by appellee the 1959 assessment of the property of appellant in Nebraska.

The assessment described above from which this appeal was taken is exhibited by the following:

I  SYSTEM VALUE

    a.  5-year average value stocks and bonds

| | | |
|---|---|---:|
| 1954 | $ | 603,355,083 |
| 1955 | | 672,344,689 |
| 1956 | | 608,351,744 |
| 1957 | | 410,040,320 |
| 1958 | | 467,935,345 |

        5)2,762,027,181 Average $552,405,436

    b.  5-year average net operating income capitalized at 6 percent

| | |
|---|---:|
| 1954 | 29,561,550 |
| 1955 | 43,739,492 |
| 1956 | 42,137,162 |
| 1957 | 38,818,024 |
| 1958 | 43,461,084 |

        5)197,717,312

        .06)' 39,543,462   659,057,700

    c.  Investment in transportation property ICC Report page 200, line 16, less 5%, less 5%, less 5%    908,402,598

        Average System Value    $706,621,911

II  ALLOCATION FACTORS

| | |
|---|---:|
| Traffic units | 24.05% |
| Gross earnings | 23.54% |
| Car and locomotive miles | 25.23% |
| Current track mileage | 15.02% |
| Average | 21.96% |

III  ALLOCATION TO NEBRASKA
$706,621,911 × 21.96% = $155,174,171
IV  ASSESSMENT
In 1957 and 1958 the allocated computed value
less 5% = Basic Value or 70% of actual value.
Therefore the allocated computed value in
1959 less 5% = 70% of actual value
$155,174,171 less 5% = $147,415,462
$147,415,462 × 1.4286 = 210,597,729 Actual Value
35% Statutory %

|  |  |
|--|--|
|  | $ 73,709,205 |
| Local assessment | 3,694,061 |

State Board Assessment
for 1959                          $ 70,015,144

Appellant exhibited in the return or schedule of its property for 1959 furnished to appellee various bases for the valuation of the property of appellant on the unitary theory and various bases for allocation to Nebraska for its share of the total valuation. Likewise the basic figures forming the value of the entire property of appellant are shown by that return or schedule. The order of appellee in its procedure to value the property as shown by section I a, b, and c of the assessment order of July 15, 1959, adopted the highest figure set forth in the return or schedule of appellant for that year.

The issue on this appeal is: Does the undisputed evidence establish $155,174,171, designated in the assessment order of appellee as allocation to Nebraska, as the actual value in 1959 of the property of appellant in Nebraska and was the increase thereof by appellee to $210,597,729 arbitrary, discriminatory, and contrary to law?

The evidence in this case was introduced in the record on behalf of or by appellant. There was no evidence offered by or on behalf of appellee. There is a

presumption that when an assessing authority values property for taxation purposes it acts fairly and legally upon sufficient evidence to sustain its action but the presumption disappears if there is evidence to the contrary and thereafter the reasonableness and legality of the valuation made by the assessing authority is one of fact to be determined from evidence, unaided by presumption, and the burden of showing an improper assessment is upon the complaining party. Baum Realty Co. v. Board of Equalization, 169 Neb. 682, 100 N. W. 2d 730; Omaha Paxton Hotel Co. v. Board of Equalization, 167 Neb. 231, 92 N. W. 2d 537; Ahern v. Board of Equalization, 160 Neb. 709, 71 N. W. 2d 307.

There is undisputed evidence of the actual value of the entire operating property of appellant in 1959 as established by the market value of its stocks and bonds, its capitalized earning power, its investment in transportation property less depreciation, and by the testimony produced by appellant to that effect. It is not true, as appellee asserts, that there is no proof by appellant that the actual value of the property is different from that determined by appellee. There is no proof or legal justification to sustain the increase of the 1959 actual value of the Nebraska property of appellant from $155,174,171 to $210,597,729 as was done by appellee as shown by section IV entitled "Assessment" of the order of appellee of July 15, 1959. The resort to fiction of deducting 5 percent from the value of the Nebraska property and multiplying the remainder by the conversion factor of 1.4286 was induced by changes in the revenue statutes of the state. The 50 percent of full value law applied to all tangible property in 1953, 1954, and 1955. The 50 percent of basic value law governed assessment of tangible property in 1956 and 1957. The amendment requiring assessment of property of that kind to be valued at actual value and assessed at 35 percent thereof became effective September 20, 1957, and it applied to 1958 and 1959 assessments. § 77-201,

R. S. Supp., 1953; § 77-201, R. S. Supp., 1955; § 77-201, R. S. Supp., 1957.

In each of the years 1953, 1954, and 1955 appellee found the value of the entire operating property of appellant, hereafter referred to as property of appellant, by use of the identical three factors used for that purpose in 1959 and called it system value. It determined the value of the Nebraska property of appellant by allocating to it a percent of the system value by the same method it did in 1959; referred to the amount thereof as the allocated actual value, 100 percent, of the Nebraska property; and fixed the assessment for each of those years at 50 percent of that value. The record is definite that in each of those years appellee determined the actual value of the property of appellant by use of the same three factors or elements of value used by appellee in 1959 in arriving at what it labeled system value but which was the actual value of the property of appellant. This is true or appellee did not in any of those years find the actual value of the property as the statute required. There is no showing or explanation in the record of appellee why system value should mean actual value in those years but should not have that meaning in 1959.

Prior to the enactment of the 35 percent of actual value assessment law all tangible property was valued at its basic value and assessed at 50 percent thereof, and the ratio of basic value to actual value was by mandate of the Legislature fixed by appellee. It determined the basic value to be 70 percent of actual value and when the statutory assessment rate of 50 percent was applied, it resulted in a statutory level assessment of 35 percent if basic value had been properly determined in the first instance. The basic value law was amended effective September 20, 1957. The basic value element was eliminated and all tangible property not exempt from taxation was required to be valued at actual value and assessed at 35 percent thereof. §§ 77-112 and 77-201,

R. R. S. 1943. Thereafter 100 percent of actual value of property which had been assessed at 70 percent could be, if its value had not changed, readily ascertained by multiplying the assessment of the previous year by the resultant of 100 divided by 70 or 1.4286.

The value of the railroad system of appellant for 1956 was ascertained by appellee as it had been in the previous years discussed above by the average of the identical three factors and the value of the Nebraska property was determined by allocating the average of the four factors used in previous years or 22.04 percent. The value of the Nebraska property was thereby produced as $151,909,288 which appellee termed allocated value which was no greater or different than but was in fact actual value. Instead of taking 70 percent of that amount in accordance with the resolution of appellee fixing the ratio of basic value to actual value, appellee declared the basic value of the Nebraska property of appellant to be $144,313,823 which was exactly 95 percent of the allocated value.

Appellee by the same items and procedure determined in 1957 what it stated was the system value of the property of appellant and allocated 21.97 percent thereof or $155,989,437 as the value of the Nebraska property which was no greater or different than but was in fact the actual value of such property. Appellee then stated the basic value was $148,189,965. That was 95 percent, not 70 percent, of $155,989,437 as the law required to arrive at basic value. The insertion in section IV of the 1958 assessment order of appellee of the property of appellant: "(1957 Computed Value 5% = Basic Value)" is an admission of what is said above concerning the 1957 assessment. This is made certain by the immediately following item in the 1958 assessment order: "1958 Computed Value 5% = $142,854,317" which is precisely 5 percent less than the 1958 computed value of $150,372,966. The 1957 assessment of the Nebraska property of appellant was made on that errone-

ous basis. It is not important that appellee designated the $155,989,437 as allocated value because the factors used and the evidence definitely show it was actual value.

Appellee substantially concedes that basic value used in the 1956 and 1957 assessments was 95 percent of what was labeled by it as allocated value. It could not be otherwise because simple arithmetic demonstrates the factors employed in composing allocated value establishes that it was actual value of the Nebraska property of appellant in each of these years. A consideration of market value of stocks and bonds, the earning power of the railroad, and the investment account less depreciation evidences actual value. There was no attempt by appellee in either 1956 or 1957 to disclose by its assessment order or otherwise why it arbitrarily said basic value was 95 percent of what was obviously the actual value of the Nebraska property when basic value of all tangible property was established by the resolution of appellee at 70 percent of actual value. This omission was a disregard and violation of the statute which required that appellee in making an assessment of railroad property "shall set forth the manner in which it arrived at the assessment, the several items included in the total assessment and the manner of arriving at the several items and the total." § 77-609, R. R. S. 1943.

The value of the entire property of appellant in 1958 was determined by the average of the same factors as used in the previous years discussed above and 21.90 percent therof was assigned by the method used in previous years to the Nebraska property. That resulted in the sum of $150,372,966, designated by appellee as computed value for the Nebraska property. That was the same character of finding arrived at by the same method as had been previously considered and treated as actual value of that property. Appellee reduced that amount by 5 percent, multiplied the remainder by 1.429, and produced $204,138,818 which was described as 1958

actual value. The statutory percentage of 35 percent was applied and it resulted in an assessment of $71,448,-586. The day of this assessment appellee adopted a resolution which recited that the method of determining the actual value of tangible property for 1958 used by all county assessors is to convert basic value for 1957 to actual value by multiplying the basic value by 1.429. Ironically, appellee also recited in the resolution that it was "convinced that railroad property should be valued at 35% of actual value as is all other tangible property." Its expressed and recorded conviction was not enough to control its action because that identical day, as shown by the same resolution, appellee valued the property of appellant in Nebraska at very much more than 35 percent of actual value resulting from the fact that the property had not been valued at 70 percent of actual value in 1957 but at 95 percent of actual value and notwithstanding this important fact the conversion factor of 1.429 was applied to the value of the Nebraska property of appellant in 1958 as found by appellee to arrive at what it called actual value. The conversion factor of 1.429 had no relation to the situation presented by the 1958 assessment. Its use was arbitrary and it produced an equally arbitrary result.

The 1959 assessment of appellant was made by the same method as the 1958 assessment was accomplished. The identical factors were employed for finding system value and the same items were used to ascertain the percentage of the system value that should be assigned to Nebraska, which was 21.96 percent. It produced $155,174,171 and appellee reduced that amount by 5 percent and multiplied the remainder by 1.4286, 100 divided by 70 carried to the fourth decimal instead of 1.429 used by it in 1958. The result was $210,597,729 which appellee designated actual value. The statutory rate of 35 percent was applied to the last amount stated above and that produced, after deducting locally as-

sessed property, an assessment of the Nebraska property of appellant of $70,015,144.

The authority and obligation of appellee were to assess the property of appellant on the same basis as other tangible property was required to be assessed. §§ 77-601 and 77-604, R. R. S. 1943. All tangible property was required to be valued at its actual value and to be assessed at 35 percent of such actual value. § 77-201, R. R. S. 1943. The Legislature has defined actual value as used in the revenue statute. § 77-112, R. R. S. 1943. Appellee by its assessment order substantially followed the statute until it found and stated the amount of the system value that was represented by the Nebraska property of appellant which was $155,174,171. Section I a of the assessment order found the system value as evidenced by the selling price of the stocks and bonds of appellant, which responds to item (6) of the statute, "market value in the ordinary course of trade." Section I b found system value as evidenced by capitalizing the net operating railroad income, which is item (1), "earning capacity of the property." Section I c found system value as shown by investment account less deduction for physical and economic obsolescence, which appellee concedes is equivalent to item (4), "reproduction cost less depreciation." The remaining three items of the statute: "(2) relative location; (3) desirability and functional use"; and "(5) comparison with other properties of known or recognized value," may be considered as included in market value and earning capacity to the extent there applicable.

The hypothesis and result of each part of section IV of the assessment order of 1959 made by appellee are incorrect factually and are contrary to law. The 1957 or 1958 allocated value less 5 percent did not equal basic value or 70 percent of actual value as that formula assumed and stated. In making the 1957 assessment instead of appellee taking 70 percent of allocated value as basic value, it treated 95 percent of allocated value

as basic value. That error resulted in overassessment, was repeated, and was given effect by appellee to the prejudice of appellant as hereinbefore noted in the assessment of 1958. The error of the first sentence inheres in each of the following parts of the formula.

There was no necessity of fact or justification of law for the resort by appellee to a reduction of 5 percent of the amount of the valuation assigned by it in 1959 to Nebraska or for the use by it of the conversion factor in ascertaining the actual value of the property of appellant in Nebraska. The use of these was arbitrary and in violation of the statute defining actual value. The use of them disregarded the undisputed evidence that the actual value of the Nebraska property of appellant did not exceed $155,174,171, the amount of the allocation by appellee to Nebraska. Appellee found that the system value of appellant was $706,621,911. Included in this amount was every possible value of the railroad of appellant including its franchise or its right to exist. Appellee made no attempt to demonstrate that there was any omission of anything of value from the schedule of property of appellant furnished appellee in 1959. It was accepted, acted upon without objection, and everything therein was valued and included in what appellee termed system value in its assessment order. Appellee belatedly now says in this court that the statute requires it to assess railroad property "together with franchises"; that the record does not show that it made a separate valuation of franchises; and that it may be presumed it considered the element of franchise rights in arriving at actual value. This may be accepted if appellee means by actual value $155,174,171, the value assigned to Nebraska. Otherwise it is incorrect because franchise value was included in the assessment by use of the factors used by appellee to reach what it termed system value. The following from State ex rel. Bee Building Co. v. Savage, *supra,* fully explains the matter of franchise value in making such

an assessment: "Where the property of a railroad corporation is assessed by the state board of equalization as a unit, and in fixing the value thereof the board takes into consideration the fact that the property is being used for effectuating the objects of the corporation, is earning an income in the transportation of passengers and carrying of freight for hire, and that such corporation is exercising the rights, powers and privileges of corporations organized for the purpose of engaging in business as common carriers, such assessment, so made, would include and cover the intangible as well as the tangible property of the corporation, and would be an assessment of its franchise."

The system value fixed by appellee of $706,621,911 is and must be accepted as the 1959 actual value of the entire railroad property of appellant. Any contention otherwise is only a play on words without evidentiary integrity or legal justification. The practice by appellee of reducing the value assigned to appellant in Nebraska by 5 percent originated in 1957. It is not set out or expressed in the assessment order of that year except as it results from the finding that the Nebraska property had a certain value for that year and that the basic value thereof was exactly 5 percent less than the total value assigned to Nebraska. This practice reoccurred in 1958 and 1959. The deduction of 5 percent of the value assigned to Nebraska in each of those years was arbitrary and without reason therefor given in the respective orders of assessment of appellee for those years. The reason suggested in this litigation by appellee that the allocated value was 5 percent more than basic value is not convincing. Appellee had fixed basic value at 70 percent of actual value of all tangible property for taxation purposes. The allocated value assigned to the Nebraska property was a finding of actual value of the property by all the applicable evidence in the record. If it was not, the appellee did not in any of these years find what the actual value of the property was in

which event it had no basis for finding the basic value of it. The indulgence of appellee making an unexplained 5 percent deduction from the value of the property to be assessed and resorting to an inappropriate and incorrect conversion factor when its primary inquiry mandated by the Legislature was to find actual value of the property to be assessed, was a resort to fictions. A fiction is not allowed to obscure the facts when the facts become important. The important facts which the fictions tended to obscure in 1958 and 1959 were that in 1956 and 1957 appellee took 95 percent of the actual value of the Nebraska property of appellant for basic value rather than 70 percent, which the law required, and based the assessment of the property thereon. Appellee then applied to the incorrect amounts found for those years a conversion factor in 1958 of 1.429 and in 1959 of 1.4286 which was in any event only permissible when the basic value of the property was fixed at 70 percent of actual value and thereby appellee added in 1959 more than $55 million to the actual value of the property of appellant in this state.

Appellee assigned 21.96 percent of the total value of the railroad property in 1959 to the Nebraska property of appellant. This allocation is uncontested. The amount of it was $155,174,171. That is the actual value of the property in 1959 concerned in this litigation and the duty of appellee was to assess it at 35 percent. Appellee destroyed any trace of reasonableness or realism by deducting 5 percent from that amount and multiplying the remainder by 1.4286 to produce a value of $210,597,729 which appellee called the actual value of the Nebraska property. The action of appellee in inflating the value of the Nebraska property of appellant by the devices it used was arbitrary, unreasonable, and contrary to law.

The original assessment order of July 15, 1959, was adopted by only two members of the board voting for it. One member voted against it, one member abstained

from voting, and one member was absent. The use of the matter contained in section IV of the order of assessment was not a mistake, an inadvertence, or because of insufficient information. It was done advisedly and arbitrarily. The Tax Commissioner of the state advised against the use of it. He presented a proposed order of assessment wholly eliminating that formula. He advised that the facts and the law required a reduction in railroad valuations for assessment purposes. One of the members who voted for the assessment order said in a voluntary, formal statement he would never be a party to extending the type of relief suggested to any special interest at the unavoidable tax expense of Nebraska farmers, main street merchants, and homeowners. However, the same statement tacitly conceded that railroad property had been overassessed and this was illustrated by a reference to 1955 when, as asserted in the statement, the "valuation should have declined because of the change in base, it actually increased 5 million dollars." The other member who supported the 1959 assessment order said he opposed any concession to any special interest group when the average taxpayer would have to make up the difference from his own pocket. Neither of these members mentioned anything concerning the value of the property to be assessed nor did they undertake to show where the judgment of the Tax Commissioner was wrong. The Tax Commissioner stated that appellee had no right to consider such an effect among taxpayers and that its only right and duty were to make an assessment of railroads at the same level as all other assessments. He appropriately said if appellee was to refuse to reduce values because other taxpayers will make up the difference, then no taxpayer, whatever his status or station, could ever get relief from unjust taxation. The observations in Cumberland Coal Co. v. Board of Revision of Tax Assessments, 284 U. S. 23, 52 S. Ct. 48, 76 L. Ed. 146, are appropriate: "The case is not one of mere errors in judgment in following a proper meth-

od, * * * but one where the challenged discrimination resulted from a plan of assessment which was none the less systematic and intentional because of belief in its validity.".

The method employed by appellee in assessing the property of appellant in Nebraska as exhibited by section IV of its assessment order of 1959 resulted in the assessment of the property at 47½ percent of its actual value as found by appellee and described in its order as allocation to Nebraska. The facts of the assessment may be correctly and simply stated as follows:

| | |
|---|---|
| Actual value | $155,174,171 |
| Assessment | 47½% |
| | 73,709,205 |
| Less local assessment | 3,694,061 |
| 1959 State Board Assessment | $ 70,015,144 |

The difference between 47½ percent and 35 percent of the actual value of the property when the very large valuation involved is considered is not substantial or approximate uniformity as contended by appellee or as required by the Constitution and applicable statutes of the state.

All tangible property has since September 20, 1957, been required to be valued at its actual value and to be assessed at 35 percent of such actual value. § 77-201, R. R. S. 1943. The evidence establishes that all tangible property except railroad property was assessed at not more than 35 percent of its actual value. The Constitution provides that taxes shall be levied by valuation uniformly and proportionately upon all tangible property, subject to exceptions not important to this case. Art. VIII, § 1, Constitution of Nebraska.

Chicago, B. & Q. R. R. Co. v. State Board of Equalization & Assessment, *ante* p. 77, 101 N. W. 2d 856, is decisive of the conclusion that the 1959 assessment of the Nebraska property of appellant by use of the

formula in section IV of the assessment order is arbitrary, discriminatory, and contrary to law. Therein it is said: "It was the duty of the State Board of Equalization and Assessment in 1959 to value railroad property in the state at its actual value and to assess it at 35 percent thereof, and any substantial departure therefrom was a disregard of the legislative mandate and constituted an arbitrary valuation and assessment of the property. * * * A formula for determining the value of tangible property for taxation purposes must be appropriate to produce the result required by statute; and if an arbitrary basis is used which is not uniformly applied to all tangible property, the result is an arbitrary one and will not sustain a valuation for taxation purposes. * * * It is an unlawful discrimination, prohibited by the Constitution and the statutes of the state, to assess the property of a railroad at 47½ percent of its actual value when all other tangible property is assessed at not more than 35 percent of its actual value. * * * Taxing authorities may not withdraw any property from the principle of uniformity of taxation as provided by the Constitution and statutes of the state and one owner of property cannot be compelled to pay a greater proportion of taxes according to the value of his property than another property owner of the same class is required to pay."

Appellee argues in support of the assessment that there is no proof that actual value of the property is different than that determined by it. The evidence of actual value was all produced by appellant and it was adopted by appellee in arriving at what was designated system value. Testimony was produced and not contradicted that system value was actual value and that allocated value of the Nebraska property was actual value. The proceedings of appellee from 1940 to 1955, when the statute was amended from requiring assessment of actual value to basic value, show that for 12 years appellee first found system value of the property

of appellant by using the market value of the stocks and bonds and the value ascertained by capitalizing its net income at 6 percent and in later years by the addition of historic or book value. The system value was allocated to Nebraska by the formula with minor variations used by appellee for that purpose in the 1959 assessment. In each of the years 1940 to 1955 system value and Nebraska allocated value were found by appellee to be the 100 percent actual value of the railroad and the 100 percent actual value of the property allocated to Nebraska, respectively. The record or the argument of appellee yields no solution of the problem of how a method by which appellee produced actual value for so many years suddenly in 1959 produced something different.

Appellee vaguely suggests that the difference in the figure of $155,174,171, allocation to Nebraska in the 1959 assessment order, and the inflated figure of $210,-597,729 produced by the use of the conversion factor could have been considered by appellee "* * * the other statutory elements which the Board is found (bound) to follow * * *" or "* * * that economic and other conditions were taken into account in arriving at assessed value." The statute is mandatory that the record of the assessment must clearly show the basis of the assessment of the railroad property, how it was arrived at, the items included, and the total of the items. § 77-609, R. R. S. 1943. This the record of the 1959 assessment of appellant does. Appellee cannot now be heard to say something undisclosed by the record was valued and included. In Fargo v. Hart, 193 U. S. 490, 24 S. Ct. 498, 48 L. Ed. 761, the court said: "We may add that it appears * * * that 'the minutes of said state board of tax commissioners' are in evidence. This means the complete minutes. It must be assumed that the minutes show all that took place in the proceedings, and therefore that we have before us all the evidence that was put in as well as a report of what was said." The effect of what appellee says is that an assessment by it can be

sustained even though there is no evidence to support it or that the proof presented to appellee is in fact contrary to the assessment if appellee recites that a certain figure is the actual value of the property. This is contrary to the plain requirements of the statute and the decisions of this court. It is obvious that the statute in this respect was made detailed and specific to prevent that very procedure in making an assessment of property. The findings of appellee contained in sections I, II, and III of its assessment order of July 15, 1959, concerning the property of appellant are correct and they are each adopted by this court.

The assessment of the 1959 property of appellant in Nebraska as contained in section IV of the assessment order of appellee of July 15, 1959, should be and it is hereby reversed.

It should be and is adjudged that the actual value of the property of appellant for 1959 in Nebraska is the sum of $155,174,171; that from 35 percent thereof or $54,310,960 there should be deducted the value of the locally assessed property of appellant the sum of $3,694,061; and that the 1959 assessment of the property of appellant in Nebraska should be and is $50,616,899.

ORDER REVERSED. JUDGMENT OF ASSESSMENT RENDERED.