IN RE ASSESSMENT OF OMAHA, LINCOLN AND BEATRICE
RAILWAY COMPANY.
OMAHA, LINCOLN AND BEATRICE RAILWAY COMPANY,
APPELLANT, V. STATE BOARD OF EQUALIZATION AND
ASSESSMENT, APPELLEE.

327 N.W.2d 108

Filed December 10, 1982. Nos. 82-057, 82-058.

James W. Hewitt, and Scott J. Norby of Crosby, Guenzel, Davis, Kessner & Kuester, for appellant.

Paul L. Douglas, Attorney General, and Ralph H. Gillan, for appellee.

BOSLAUGH, CLINTON, and HASTINGS, JJ., and CAMBRIDGE, D.J., and COLWELL, D.J., Retired.

PER CURIAM.

The Omaha, Lincoln and Beatrice Railway Company (OL&B) has appealed from the orders of the State Board of Equalization and Assessment fixing the system value and assessment of the railroad for the years 1980 and 1981.

All operating property of a railroad in the State of Nebraska is assessed by the state board. Neb. Rev.

Stat. § 77-601 (Reissue 1981). The state board determined the system value of the railroad property to be $385,880 for 1980. The railroad filed a complaint alleging that the state board had failed to allow a sufficient amount for obsolescence and had not considered the earnings of the railroad. The complaint alleged that the system value should have been fixed at $193,501.94 for 1980.

In 1981 the state board determined the system value to be $413,142. The railroad again filed a complaint alleging the system value should have been fixed at $320,355.

After an evidentiary hearing on both complaints the state board fixed the system value of the railroad at $385,880 for 1980 and $413,142 for 1981. From these orders the railroad has appealed.

The review in this court is de novo on the record. Neb. Rev. Stat. § 77-617 (Reissue 1981); *Chicago, B. & Q. R.R. Co. v. State Bd. of Equalization & Assessment,* 170 Neb. 77, 101 N.W.2d 856 (1960).

The assignments of error are that the valuations fixed by the board were excessive and its action was arbitrary because it failed to take into consideration the gross or net earnings of the railroad.

"The subject of the valuation of railroads is a difficult one. Neither railroad commissioners, nor taxing authorities, nor courts have as yet arrived at settled or infallible rules or criteria for the ascertainment of actual value of such property. Approximation is all that can reasonably be expected." *Chicago, R. I. & P. R. Co. v. State,* 111 Neb. 362, 378, 197 N.W. 114, 120 (1923).

The railroad in question is a Class III switching and terminal railroad. It is wholly owned by Nebco, Inc., of Lincoln, Nebraska. The railroad has only 2.67 miles of track and two diesel-electric locomotives, a 1950 44-ton General Electric locomotive and a 1951 70-ton General Electric locomotive. In 1980 the railroad owned 191 open top hopper and ore cars,

and in 1981, 202 open top hopper and ore cars.

The railroad performs no line-haul service and there are only three industries located on its tracks: Far-Mar-Co., Inc., McGowan Grain, and Lincoln Ready Mix. All of its revenue is derived from switching services or railroad car rental.

The roadbed of the railroad is described as substandard and many of the cars are more than 25 years old and do not meet industry standards for interchange service.

In 1980 the railroad experienced a net operating loss for the fourth year in a row. At the initial hearing before the board, on July 7, 1980, Michael Heaton, a property tax specialist employed by the Nebraska Department of Revenue, testified that in determining the 1980 assessment for the railroad the department did not take into consideration the gross and net earnings of the railroad.

At the hearing on December 1, 1981, on the complaints filed by the railroad, Heaton again testified that the income of the railroad was not used in making the determination of the system value for 1980. Arlo Woolery, an expert witness called by the department, testified that he did not use the income reported by the railroad in his calculations.

Heaton testified that the value of a railroad usually is determined through income, cost, and market data approaches. The department did not use a market data approach because of the difficulty in finding a truly comparable railroad for comparison purposes and the railroad's capital stock is closely held. The railroad has no bonded indebtedness. The income approach was not used because of the difficulty in making adjustments to income which would have been necessary.

The department based its determination on the cost of equipment less depreciation as shown on the report, Form 41, filed annually with the department by the railroad. To this was added the value of the roadbed, calculated at $6.25 per foot of rail. The

total was then reduced by 20 percent for obsolescence.

The witnesses for the railroad at the hearing on the complaints were its secretary, vice president, and a securities analyst. The secretary testified as to the losses sustained by the railroad during the last 5 years and the values as shown on the books of the railroad. The net book value of road and equipment was $441,560. He testified that the property should be valued at $290,107.86 less one-third because of lack of profitability, leaving a system value of $193,501.94 for 1980 and $320,355 for 1981.

The securities analyst testified that the railroad company would have no significant appeal to an outside investor because of its lack of earnings. It was also his opinion that the company had no significant potential for growth.

An officer of a scrap metal company, called by the department, testified that the locomotive and cars owned by the railroad had a salvage value as scrap metal of $162,562.56 on January 1, 1980.

Heaton testified that he determined the system values of all railroads operating in Nebraska in 1980 and that the board adopted his recommended values. In valuing the railroads the same approaches were used where applicable. The income approach and the market data approach were not used in valuing the OL&B. The values were calculated from the Form 41 reports filed with the department by the railroads. He also consulted the R-3 form, a report filed with the Interstate Commerce Commission by the railroad, in making his determination. The obsolescence factor used in valuing the railroad was lower than the average factor applied to other railroads because much of the equipment, although used, had been purchased recently.

The department called as an expert witness Arlo Woolery, an appraiser with considerable experience in appraising railroad properties. At the request of the department Woolery made an appraisal of the

OL&B. Woolery testified that the value of the railroad by the cost approach was $573,600; by the market data approach, $421,500; and by the income approach, $415,000. He concluded that the market value of the railroad as of January 1, 1980, was $420,000.

As we view the record the valuation made by the board was not excessive. The presumption that a valuation made by a board of equalization is correct applies to the valuation of railroad property made by the state board. *Union P. R.R. Co. v. State Board of Equalization & Assessment,* 170 Neb. 139, 101 N.W.2d 892 (1960). The burden of showing the assessment was improper is on the complaining party.

We do not find the valuation evidence of the railroad to be persuasive. The only direct testimony as to valuation presented by the railroad was that of the secretary. The secretary admitted that he was not a qualified appraiser and gave no explanation as to why he believed the net book value of the property should be reduced $151,452.14 to arrive at $290,107.86, which should then be reduced by one-third because of lack of profitability.

"[T]he failure [of a railroad] to operate at a profit is not in and of itself conclusive evidence that the assessment of its property is unreasonable, nor does it operate to relieve the railroad from paying its proportion of the public tax burden." *Jersey City v. State Dept. of Taxation, &c.,* 136 N.J.L. 353, 356, 56 A.2d 479, 481 (1948).

Although we have said that "The earnings of a railroad are evidence of a most important character in determining the value of the railroad," *Chicago, B. & Q. R.R. Co. v. State Bd. of Equalization & Assessment,* 170 Neb. 77, 92, 101 N.W.2d 856, 866 (1980), it is the earning capacity of the railroad that is of greater importance. Earning capacity and actual earnings are not the same thing. It is what the property, efficiently managed, should have earned

that throws light on value. *Harris Trust & Savings Bank v. Earl,* 26 F.2d 617 (8th Cir. 1928).

Although it is true the witnesses for the department, Heaton and Woolery, testified they did not take into consideration the gross and net earnings of the railroad, as shown on its books, the witnesses did consider the earning capacity of the railroad. The railroad is a wholly owned subsidiary of Nebco, and the evidence suggests its profit and loss statement did not properly reflect its earning capacity. There was some evidence to the effect that the general administrative expense appeared to be excessive and certain car repair expenditures should have been capitalized rather than treated as expense items in computing the earnings of the railroad. The effect of such adjustments would be to increase the earnings of the railroad. The department witness Woolery called attention to the fact that from 1974 to 1979 the railroad had invested $718,769 in additional cars, and in the last 3 years, 1977 to 1979, $517,503 in cars and car repairs.

We conclude that the orders of the State Board of Equalization and Assessment fixing the system value and assessment of the railroad for the years 1980 and 1981 should be affirmed.

AFFIRMED.