FREEMAN P. KIRKENDALL ET AL., APPELLEES, V. ERNEST S. WEATHERLEY ET AL., APPELLANTS.

FILED NOVEMBER 10, 1906.   No. 14,341.

1. Assignment: EXECUTION: VALIDITY.  A voluntary assignment for the benefit of creditors, executed in a sister state according to the laws thereof, is ineffectual to convey real property situated in this state, unless it is executed and recorded in such manner as would render it so effectual if made in this state.

2. Election of Remedies: ESTOPPEL.  A creditor, by participating in an insolvency proceeding begun in a sister state by a voluntary deed of assignment insufficient in form to be effectual to convey real property situated in this state, may become estopped to impeach a purported title of a purchaser of such property acquired in good faith in the progress of such proceedings.

3. Mortgages: EQUITY OF REDEMPTION: FORECLOSURE.  Although by express stipulations in a trust deed or mortgage of land situated in this state the legal title and right of possession of such land may be conveyed to the trustee or mortgagee, yet the equity of redemption of the mortgagor cannot be extinguished by adversary proceedings other than judicial foreclosure.

4. ———: ———: DEED TO MORTGAGEE.  When by express stipulations the legal title and right of possession of land situated in this state are conveyed to a trustee in a trust mortgage, the trustee may, with the knowledge and acquiescence of the mortgagor, without fraud or collusion, or the intent or effect to injure or defraud third persons, convey such legal title and right of possession to the mortgagee in consideration of a release and discharge of the mortgage debt, and in such a case a conveyance of the premises by the mortgagor, either directly or through a third person, to the mortgagee with the intent and purpose to extinguish the equity of redemption will have that effect.

APPEAL from the district court for Douglas county: ALEXANDER C. TROUP, JUDGE.  *Affirmed.*

*Joel W. West, Guy R. C. Read* and *Jacob Fawcett,* for appellants.

*William Baird & Sons* and *Baldrige & De Bord, contra.*

AMES, C.

The Lewis Investment Company is, or was, an Iowa corporation having its principal place of business at the city of Des Moines, in that state. It became insolvent, and on the 24th day of December, 1895, executed to one Nelson Royal, for an express nominal consideration of one dollar, a general assignment of all its property wherever situated, for the benefit of creditors, and reciting the trusts and powers usual in such instruments. Royal was a private citizen and a resident of the city named. At the time of the execution and delivery of said instrument the corporation was the owner of a city lot in the city of Omaha, in this state, but the assignment was filed for record in Douglas county on the same day as 1896, some ten months after its execution, but it was as to form and substance in conformity with the statute of the state of Iowa relative to the subject of voluntary assignments for the benefit of creditors. On the 26th day of August, 1896, Royal, pursuant to a judicial order rendered by one of the Iowa courts, conveyed the lot, or attempted so to do, to one Sage, and Sage afterwards deeded it to one Smith. The former of these deeds was filed for record in Douglas county on the same day as the assignment, but the latter not until September, 1902. Smith executed a lease of the premises to Kirkendall, one of the plaintiffs below and appellee, who went into and is now in possession of the same. The other plaintiff below and appellee is the executor of the will of Smith, now deceased. At the time of the execution of the assignment the Lewis Investment Company was indebted to the Des Moines National Bank upon certain promissory notes which the latter afterwards sold and assigned to defendant and appellant, Weatherley, who in 1904, begun in the district court for Douglas county a suit in foreign attachment thereon against the investment company, and caused a levy to be made upon the Omaha lot. The action proceeded regularly to judgment, sale and confirmation,

and the issuance of a writ of assistance to put the purchaser, who is the plaintiff in attachment, into possession, when this suit was begun by the tenant and the executor of the lessor to perpetually restrain the process and obtain a decree quieting their title and possession. The defendant filed a cross-bill, praying similar relief in his own behalf, and upon the issues thus joined there was a trial, resulting in a judgment for the plaintiffs, from which this appeal is prosecuted.

The statute of this state relative to voluntary assignments enacts that "no voluntary assignment for the benefit of creditors hereafter made shall be valid unless the same shall be made in conformity to the terms of this act." Comp. St., ch. 6, sec. 1. It further provides that every such assignment shall name as assignee the sheriff of the county in which the assignor or one of several assignors resides, "and within 24 hours after its execution it shall be filed for record in the clerk's office of the county in which the assignee resides" (sec. 6), and within 30 days thereafter in the clerk's office of every county in which there shall be real estate of the debtor, and that a failure of such record within the time aforesaid shall avoid the instrument as to the property situated in any such county. It is likewise enacted that "real estate so assigned shall be described in the deed of assignment in such manner as would be requisite in an ordinary deed of conveyance thereof" (sec. 3). None of these requirements was complied with in the instrument under discussion, so that it is quite evident that if it had been executed in this state it would have been wholly ineffectual for any purpose. *Sager v. Summers,* 49 Neb. 549. And if in such a case it had complied with all of them except that with respect to description, it would without doubt have been insufficient to convey the lot in suit. Saying nothing about the other requirements, can omission to comply with those relative to description and recording be excused and the instrument upheld for the reason that the assignor was a nonresident of the

state or a foreign corporation? The evident policy of the law is to compel the immediate identification of the real property sought to be conveyed, and facilitate, not only the record of the instrument, but also the ascertainment by mere inspection whether such record has been duly made. One obvious object of this regulation is that creditors may be speedily advised whether lands of the debtor situate in any particular county are or will be claimed by the assignee. The statute makes no exception. Can the court make one? We think not. An elementary and nearly, if not quite, universal rule of law is that instruments intended to affect the title of real estate must, to be effectual, conform to the law of the state or country in which the land is situated, or be such as that law authorizes or prescribes. This proposition is, we think, too well settled to require the citation of authorities in its support. We know of no principal or authority that exempts voluntary assignments for the benefit of creditors from this rule. Nor do we know of any law which limits the right of seizure of property, which a debtor has made an ineffectual attempt to convey, to creditors who are residents of the state. Citizens of each state have all the privileges of citizens of every other state, among which, undoubtedly, are the rights to apply to the courts of the latter and to have the aid of their process for the enforcement and the collection of their demands and the protection of their persons and property.

But the payee of the notes, which were the foundation of this suit in attachment, retained them until after their maturity and proved them in the Iowa insolvency proceeding. No dividend was declared or paid in that proceeding, but *Green v. Gross*, 12 Neb. 117, is cited as authority that the bank, and also, of course, its assignee, is estopped from afterwards attacking the title to any of the property, the proceeds of the sale of which might have contributed to the fund in the distribution of which it would have participated, both because of its residence

in the state of Iowa and because of demand for such participation. We have already given briefly our reason for not being able to concur in the first of these propositions, but the second is not so easily brushed aside. An assignment in insolvency under state authority differs from a proceeding in bankruptcy under the federal statute in the important particular that it does not affect creditors compulsorily. They participate, if at all, voluntarily, and if they refrain from so doing their demands and their remedies thereon are unaffected, except to the extent that the debtor's property is lawfully withdrawn from their reach by the due operation of the insolvency laws, just as it might have been so withdrawn from any one of them by a precedent judicial seizure of it by one more diligent. But voluntary participation may have important consequences. An instance is easily conceivable in which the bulk of the property belonging to an insolvent and attempted to be assigned by him is real estate lying outside the state. Suppose that such had been the case in the present instance, and that the bank had obtained a dividend, say of 50 per cent. of its claim, from participation in the distribution of the proceeds of the sale of such foreign lands; could it afterwards impeach the title of the purchaser and obtain satisfaction of the residue of its claim by a resale of the property? Counsel for the attachment plaintiff argue that the doctrine of estoppel, whatever its force in other cases, has no application in this instance, because of the fact that no dividend was declared or paid, and cite *Thompkins v. Adams,* 41 Kan. 38, in support of this contention. But no such exception is made in this court in *Green v. Gross, supra,* and we think such a one would be impracticable. It would permit a creditor to speculate and experiment with inconsistent remedies; pursuing one until he became dissatisfied with it, and then abandoning it for the other, or prosecuting one until he obtained partial satisfaction, and then resorting to the other for the recovery of the remainder of his claim. Such a course would be manifestly unjust both to other credi-

tors of the insolvent and to a purchaser in good faith and for value relying upon the sufficiency of the insolvency proceedings in which the attachment plaintiff had participated., We are of the opinion that in such cases the rule of law relative to the election of remedies is applicable, subject, of course, to its own peculiar limitations and exceptions; but as to these last no issue is made or tendered by the pleadings.

In November, 1894, the investment company executed to one Lewis, as trustee, a trust mortgage upon the lot in controversy and other property to secure the payment of certain indebtedness. The instrument purports to have conveyed to the trustee the entire title, legal and equitable, together with the right of possession of the premises described in it, with authority to sell and convey the same at private sale at his discretion, and apply the proceeds to or toward the payment of the obligation secured thereby. In the summer of 1896 there was a conference between the creditor under this mortgage and Lewis, the trustee, who was also president of the corporation, and Nelson Royal, the assignee in insolvency, at which time it was agreed that the obligation of the investment company should be satisfied and discharged upon the execution and delivery by the trustee and by the assignee, severally, of deeds of conveyance of the property in question in fee simple to one W. H. Sage, one of the predecessors in title to the plaintiffs in this suit. On the 11th day of July, 1896, the district court for Polk county, Iowa, granted an order, upon the application of the assignee, purporting to authorize him to carry the arrangement into effect, so far as he was concerned, by the execution and delivery of his contemplated deed, which he accordingly did on the 26th day of the following August; and on the 31st day of the same month, Lewis consummated the transaction by executing his deed to Sage, who then went into possession of the Omaha lot and has remained so, by himself or his tenants or grantees, until the present time. By this transaction, which appears to

have been entered into fairly, voluntarily and in good faith, considerable other property of the investment company included in the trust deed appears to have been released from the lien of that instrument and an obligation against the company of something like $20,000 in amount to have been satisfied and discharged.

Counsel for the attachment plaintiff, defendant herein, contends that the power of private sale contained in the trust mortgage was void, and that the deed of Lewis, trustee, to Sage was therefore ineffectual; but in response to this contention several objections may be urged. The statute of this state, sec. 55, ch. 73, Comp. St. 1903, does not prohibit a conveyance of the legal title and right of possession to a mortgagee, but merely enacts that such a conveyance shall not be presumed in the absence of express stipulation (*Felino v. Newcomb*, 64 Neb. 335), and the courts have held that, even in the presence of such stipulations, the mortgagor's equity of redemption cannot be extinguished by adversary proceedings other than judicial process of foreclosure. But does this rule prevent an amicable adjustment of the debt by a voluntary release and quitclaim of the equity of redemption? Is not the equitable rule exclusively for the benefit and protection of the mortgagor and persons in privity with him in blood or by covenant? In the absence of fraud or collusion, can a stranger avail himself of it to the disturbance or impairment of an amicable settlement upon a valuable consideration, and of a state of affairs satisfactory to both mortgagor and mortgagee? Would not the mortgagor and his privies, and more certainly his attachment and execution creditors, be estopped? There is nothing in the statute, and we know of no principle of law or equity, that forbids or impeaches such a transaction, when entered into or acquiesced in in good faith, and without an intent or effect to injure or defraud creditors or third persons.

For nearly eight years before the suit in foreign attachment was begun the plaintiffs and their predecessors

had been in possession claiming ownership under both the foregoing claims of title. Nothing is alleged impeaching the good faith of either or any of them, nor is there any denial of the plain and unequivocal implications of the record that the mortgagor, the assignee in insolvency and the remaining creditors of the former, in fact, all persons interested, except the plaintiff in attachment, have, with full knowledge of all the facts, at all times acquiesced, and still do so in the transaction and in the title sought to be conveyed and assured thereby. Neither is it averred that the land in controversy was, at the time the equity of redemption was released and conveyed, of a value in excess of the amount of the obligation which, in consideration of the transaction, was released and discharged. Nor is it denied that said release and discharge were effectual. We are unable to understand upon what principle of equity the title thus intended to be conveyed to, and quieted in, the mortgagee can at this late day be disturbed.

In conclusion, it may be well to add that it is not to be inferred from the fact that the foregoing matters of substance have been considered and decided that the court countenances the practice sought to be inaugurated in this case by the issuance of a writ of assistance to put a purchaser at a judicial sale in foreign attachment into possession of real property supposed to have been sold. The writ of assistance is the process of a court of equity, and not of a court of law. The plaintiff in this court was not a party to the attachment suit, but during and before the pendency of that action was and had been in the possession of the premises claiming adversely to both the plaintiff and the defendant and to all the world. It is clear, beyond the possibility of dispute, that he was entitled to his day in court in some regular form of action at law or in equity before his title could be affected or his possession disturbed.

We therefore recommend that the judgment of the district court be affirmed.

OLDHAM and EPPERSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be

AFFIRMED.