GUSTAF A. BLID, APPELLEE, V. LENA BLID, APPELLANT.

FILED SEPTEMBER 16, 1908. No. 15,282.

1. Divorce: EVIDENCE: ESTOPPEL. In an action brought by the husband against his wife for divorce on the grounds of desertion, letters in the handwriting of the wife, addressed to the husband, and asking for a reconciliation of their differences and to be taken back, were received in evidence, but their authorship was denied by the wife, who testified she could not write the English language. *Held*, That the wife, after her denial of writing the letters, could not rely on their contents to establish that her desertion was not wilful in its inception and during its continuance to the trial.

2. ————: CUSTODY OF CHILDREN. In the action above referred to, the husband was awarded the custody of the child of the parties, a girl about five years' old. The evidence disclosed that the wife, on separating from her husband, took her child to the home of her parents, where she continued to live most of the time up to the trial. The home of the parents was in what was known as the "red light" portion of the town, in near proximity to a number of houses of prostitution. *Held*, That the court did not err in giving to the father the custody of the child and removing it from the evil influences of the neighborhood, even though the good character of the wife and her father was not questioned.

APPEAL from the district court for Dawes county: WILLIAM H. WESTOVER, JUDGE. *Affirmed.*

*Albert W. Crites* and *Ernest M. Slattery,* for appellant.

*Justin E. Porter, contra.*

DUFFIE, C.

The district court for Dawes county entered a decree granting a divorce to the plaintiff and giving him absolute custody of Jennie Blid, the five-year-old child of the parties. The decree contains a provision allowing the defendant to visit her child at such times as she may desire during the daytime, and so long as she shall conduct herself in the presence and home of said child in a becoming manner. The court refused to supersede the decree so far as it relates to the custody of the child. Defendant has appealed from this decree, and from a judgment dismissing her cross-bill, in which she asked a divorce and alimony.

The parties were married in Dawes county, Nebraska, in July, 1901. They lived together on plaintiff's farm until about Christmas of that year, when defendant left the plaintiff and commenced an action for divorce. We gather from the evidence that this action was instigated by defendant's parents; that her attorney, becoming acquainted with the facts, sent for the husband, and at a meeting between them in the office of the attorney they became reconciled, and again commenced living together. In order to place defendant beyond the reach and influence of her parents, plaintiff removed to Lead, South Dakota, where he was employed by the Homestake Mining Company. They lived there until December, 1903. On the 16th of that month the plaintiff, on his return from work to his home, found the house deserted. He afterwards ascertained that the defendant's father and brother-in-law had come to Lead, taken the defendant, her child, and some articles of furniture, and returned with them to their home in Crawford, Dawes county, Nebraska, where defendant commenced a second action for divorce. This action being resisted, defendant abandoned it, when plaintiff commenced an action for divorce in South Dakoto; but, on learning that the court there had no jurisdiction over the child, who was in Nebraska with its

mother, he dismissed that action, returned to his old home in Dawes county, where he commenced and prosecuted the present action. Prior to returning to Dawes county he had received several letters, signed by his wife, and, as he testifies, in her handwriting, in which she complained bitterly of her parents and their treatment, and from the statements of which, if true, he was justified in believing that they were seeking to obtain his property, or a judgment against him for the payment of alimony. These letters sought a reconciliation with the plaintiff. In her last letter, of June 29, 1904, she made an appointment to meet the plaintiff at Chadron with her child on a certain Friday night. Plaintiff went to Chadron to keep this appointment, and, failing to find her there, went to Crawford the next day, where he met her on the street, when she explained that she could not keep the Chadron appointment because of her mother's actions. After some conversation they agreed to meet again the next day, but defendant failed to keep her appointment, when plaintiff returned to Lead, giving up further efforts to arrange matters between them.

The evidence is undisputed that defendant's parents, with whom she has been living most of the time since deserting plaintiff, resided in what is known as the "red-light" district in the town of Crawford. It is true that they built their residence when the town was new and before that locality had been surrendered to bawdy houses; and, while they are not responsible for the bad condition of their surroundings, it is nevertheless evident that it is not the proper place in which to bring up the young child of the parties, and this was evidently one of the reasons which prompted the district court to place the child in the custody of the plaintiff. The moral character of the defendant and her father is not seriously questioned, and the attorney for appellant is urgent in his demand that the decree, in so far as it takes from her the custody of her five-year-old child, should be reversed. It is earnestly insisted that the letters purporting to be written

by the defendant to her husband, which we must confess are pathetic in terms seeking for a reconciliation with him, should have moved the court to deny the divorce sought by the plaintiff on the ground that no real desertion by the defendant was established; that the desertion was not wilful; that she had repented and asked to be taken back. Had the defendant acknowledged the authorship of the letters there would be great force in this argument, but she went on the stand and denied writing them. She testified that she could not write in the English language; that she could only sign her name in Norwegian. She denied her signature to her petition for a divorce and to affidavits that had been filed in the action. She refused to write her name, and her parents, her sister and her brother-in-law all testified that she was unable to write English, in which language the letters referred to were written. That this evidence was false is conclusively shown by the young lady with whom she corresponded while living in Lead, and by testimony of the mother of this young lady, and by other evidence which is undisputed and indisputable. The charges made by the defendant against the plaintiff are wholly unsupported, except by her own evidence and the evidence of these relatives, whose testimony, we are sorry to say, should receive but little credence. The defendant's letters to her husband, upon which we are asked to say that she did not wilfully desert him and desired to return to his home, are the letters which the defendant herself denies, which she says she did not write, and which she solemnly declares she was unable to write. The most charitable view that can be taken of the case is that the defendant is so fully under the influence of her parents and relatives that she follows their advice and direction, rather than her own better judgment. While she is to be pitied for this, the husband is not to blame, and cannot be charged with her want of firmness to resist advice or dictation, which leaves him without a wife and homeless, although a married man.

The evidence fully supports the decree entered, and we recommend its affirmance.

EPPERSON and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.