IN RE ASSESSMENT AND VALUATION OF CHICAGO,
BURLINGTON & QUINCY RAILROAD COMPANY.
CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY,
APPELLANT, V. STATE BOARD OF EQUALIZATION AND
ASSESSMENT OF THE STATE OF NEBRASKA, APPELLEE.

101 N. W. 2d 856

Filed March 18, 1960. No. 34713.

78

*J. W. Weingarten* and *Eldon Martin,* for appellant.

*Clarence S. Beck,* Attorney General, and *Homer G. Hamilton,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This controversy concerns the assessment of the property of appellant in Nebraska by appellee for the purpose of all ad valorem taxes, except municipal taxes, for the year 1959. Appellant made a return or schedule of its property as of March 31, 1959, to appellee in all respects as required by the statute. § 77-603, R. R. S. 1943. Appellant appeared at a hearing before appellee on May 4, 1959, and produced evidence relative to the value of its property. Appellee on July 15, 1959, found and determined that the actual value of the property of appellant in Nebraska subject to assessment for taxation purposes by appellee was $153,326,173 and it assessed the property, after deducting locally assessed property of appellant, at the sum of $52,744,745.

The complaint of appellant concerning the assessment made by appellee alleged in substance the following: The true, actual value of the property of appellant in Nebraska in 1959 did not exceed $112,974,922, it should be assessed at 35 percent thereof or not to exceed $38,-621,807 after deduction of locally assessed property, and $14,122,938 of the assessment made by appellee was in excess of the lawful and just assessment of the property of appellant in Nebraska. The property was assessed by appellee at not less than 46 percent of the true, actual value thereof and substantially all other taxable property in Nebraska in 1959 was assessed at not to exceed 35 percent of its actual value. The assessment of the property of appellant was unlawful, discriminatory, in violation of the constitutional requirement of the state that taxes shall be levied by valuation uniformly and proportionately upon all property and franchises, and in violation of the statutory mandate that the property of appellant shall be assessed on the identical basis as other tangible property. The assessment appropriates the property of appellant without due process of law, denies the equal protection of the law, and

takes its property for public use without compensation in violation of provisions of the Constitution of Nebraska. The assessment of $52,744,745 was contrary to the evidence produced at the hearing before appellee, was unlawful and discriminatory, was capriciously made by the use of erroneous methods and fundamentally wrong principles, and was accomplished by arbitrarily increasing the true, actual value of the property of appellant to $153,326,173 before assessing it at 35 percent of actual value. The complaint asked appellee to set aside the assessment of the property of appellant and to determine the assessed value thereof for 1959 to be $38,621,807 as required by law.

A hearing was held by appellee on July 28, 1959, at which time additional evidence was introduced by appellant. Its complaint was that day denied and the original assessment of the property of appellant was affirmed by appellee. This appeal is a challenge of the legality of the recited actions of appellee.

The authority of this court in a proceeding of this character is by legislative mandate to hear and determine the matter in controversy de novo upon the record. § 77-617, R. R. S. 1943.

Appellee is charged with the obligation of assessing property of railroads and railroad corporations in the state except designated items outside of right-of-way and depot grounds. § 77-601, R. R. S. 1943. The Legislature has not defined any method by which railroad property in the state shall be valued for taxation by appellee. The Legislature has directed that specified things shall be considered but it has not prescribed any definitive formula for ascertaining value. That is committed to the judgment and discretion of appellee to be exercised fairly within legal limitations and restrictions. Appellee may resort to any method by which a substantially just and correct determination of the value of such property can be reached if it includes consideration of the things which the statute requires.

This court in Chicago, R. I. & P. Ry. Co. v. State, 111 Neb. 362, 197 N. W. 114, remarked: "There are no settled or infallible rules for the ascertainment of the actual value of railroad property for the purpose of taxation. * * *." The opinion in that case states: "The subject of the valuation of railroads is a difficult one. Neither railroad commissioners, nor taxing authorities, nor courts have as yet arrived at settled or infallible rules or criteria for the ascertainment of actual value of such property."

In Great Northern Ry. Co. v. Weeks, 297 U. S. 135, 56 S. Ct. 426, 80 L. Ed. 532, it is said: "In determining the amount of the assessment the board was not bound by any formula, rule or method, but for guidance to right judgment it was free to consider all pertinent facts, estimates and forecasts and to give to them such weight as reasonably they might be deemed to have." See, also, State ex rel. Bee Building Co. v. Savage, 65 Neb. 714, 91 N. W. 716; Chicago, St. P., M. & O. Ry. Co. v. State Board of Equalization, 133 Neb. 640, 276 N. W. 391; Rowley v. Chicago & N. W. Ry. Co., 293 U. S. 102, 55 S. Ct. 55, 79 L. Ed. 222; Northern P. Ry. Co. v. State, 71 N. D. 93, 299 N. W. 696.

Appellee determined the actual value, referred to by it as system value, of the railroad property of appellant by a consideration of three factors: 5-year, 1955-1959, average value of the stocks and bonds; 5-year, 1954-1958, average of net operating income capitalized at 6 percent; and investment in transportation property less depreciation. Each factor was given equal weight and this resulted in an average value of the railroad property of appellant of $451,177,807. This was the actual value of the railroad of appellant for assessment purposes as determined by appellee. Appellee then decided the proportion or share of this value that should be allocated to Nebraska because of the part of the property of appellant therein. This was determined by

a consideration of four factors referred to by appellee as allocation factors: Current track mileage, car and locomotive miles, traffic units, and gross earnings or operation revenue in Nebraska compared with the same factors in other states where the property of appellant is located. The component average of the four factors was 25.04 percent. This, applied to the total value of the railroad, designated system value by appellee, of $451,177,807, produced $112,974,922 described as the value allocated to Nebraska. This was the actual value of the property of appellant in Nebraska in 1959 subject to taxation as determined by appellee but it did not take 35 percent of $112,974,922, the value allocated to Nebraska by it. Instead it reduced that amount by 5 percent or to $107,326,175, multiplied that figure by 1.4286 thereby increasing the amount to $153,326,173, and labeled it "actual value." Appellee then took 35 percent of that amount or $53,664,160, deducted the amount of local assessment of $919,415, which resulted in $52,744,745, and that was made by appellee the 1959 assessment of the property of appellant in Nebraska. The assessment described above from which this appeal was taken is exhibited by the following:

I  SYSTEM VALUE

    a. 5-year average value stocks and bonds

| | | |
|---|---|---|
| 1955 | $ | 373,633,444 |
| 1956 | | 360,350,195 |
| 1957 | | 391,482,791 |
| 1958 | | 397,774,657 |
| 1959 | | 372,538,031 |
| 5) | $1,895,779,118 | $379,155,823 |

    b. 5-year average net operating income capitalized at 6%

| | |
|---|---|
| 1954 | 27,748,529 |
| 1955 | 26,490,403 |
| 1956 | 25,542,287 |

```
1957                    21,001,392
1958                    23,672,803
                      ─────────────
                 5)$ 124,455,415
                      ─────────────
                      24,891,083
                         .06   414,851,383
```

c. Investment in transportation property
   less recorded depreciation,
   $688,859,609, less 10%, less 5%,
   less 5%                                559,526,216
                                       ─────────────
                                    3)$1,353,533,422
                                       ─────────────

Average System Value              $  451,177,807

II  ALLOCATION FACTORS
    a. Current track mileage    28.21%
    b. Car and locomotive miles 24.03%
    c. Railway traffic units    24.60%
    d. Operating revenue        23.33%
                                ─────────
    Average                     25.04%

III ALLOCATION OF COMPUTED VALUE
    Average system value $451,177,807 x 25.04%=
    $112,974,922 value allocated to Nebraska

IV  ASSESSMENT
    In 1957 and 1958 the allocated computed value
    less 5% equals "basic value" or 70% of actual value.
    Therefore, the allocated computed value in 1959
    less 5% equals 70% of actual value.  Therefore,
    $112,974,922 less 5% equals $107,326,175.
    $107,326,175 x 1.4286=$153,326,173 actual value
                              35%  statutory percent
                           ─────────────
                           $ 53,664,160
    Less local assess-
    ment                       919,415
                           ─────────────
    1959 State Board
    assessment             $ 52,744,745

The evidence in this case was all introduced in the record by appellant. There was no evidence offered by or on behalf of appellee. There is a presumption that when an assessing authority values property for taxation purposes it acts fairly and legally upon sufficient evidence to sustain its action but the presumption disappears if there is evidence to the contrary and thereafter the reasonableness and legality of the valuation made by the assessing authority is one of fact to be determined from evidence, unaided by presumption, and the burden of showing an improper assessment is upon the complaining party. State ex rel. Bee Building Co. v. Savage, *supra;* Baum Realty Co. v. Board of Equalization, 169 Neb. 682, 100 N. W. 2d 730; Omaha Paxton Hotel Co. v. Board of Equalization, 167 Neb. 231, 92 N. W. 2d 537; Ahern v. Board of Equalization, 160 Neb. 709, 71 N. W. 2d 307.

There is undisputed evidence of the actual value of the entire property of appellant in 1959 as shown by the market value of its stocks and bonds, its capitalized earning power, and its investment in transportation property less depreciation. It is not true, as appellee asserts, that there is no showing by appellant that actual value of the property is different than that determined by appellee. There is no evidence or legal justification to warrant the increase from $112,974,922 to $153,326,173 in the actual value of the property of appellant as was done by appellee as shown by section IV entitled "Assessment" of the order of appellee of July 15, 1959. The resort to the device of the multiplier or conversion factor of 1.4286 was occasioned by statutory change from assessment of tangible property at full value to 50 percent thereof in 1953, to 50 percent of what was termed basic value in 1956, and to 35 percent of actual value in 1957. The 50 percent of full value law applied to all tangible property in 1953, 1954, and 1955. The 50 percent of basic value law governed assessments in 1956 and 1957. The law requiring assessment of tangible

property at 35 percent of actual value became and has been effective since September 20, 1957. It governed 1958 and 1959 assessments. § 77-201, R. S. Supp., 1953; § 77-201, R. S. Supp., 1955; § 77-201, R. S. Supp., 1957.

In each of the years 1953, 1954, and 1955 appellee found the system value of the property of appellant by use of the identical three factors used in 1959, determined the actual value of the Nebraska property by allocating to it a percent of the system value in the same manner as it did in 1959, and fixed the assessment each year at 50 percent thereof. It is clear that in each of those years appellee determined the actual value of the property of appellant by use of the identical three factors or elements of value used by appellee in 1959 in arriving at what it labeled system value.

Appellee on July 11, 1956, declared by resolution "that the basic value of all tangible property and real property assessed in the State of Nebraska for 1956 has been determined to be 70 per cent of actual or market value." The value of the railroad system of appellant for 1956 was determined by appellee as it had been in the years 1953, 1954, and 1955 by the average of three factors: Stocks and bonds, capitalized net operating income, and the investment account less depreciation; and by allocating 25.23 percent thereof, the average of the four factors used in previous years, the value of the Nebraska property of $118,353,152 was obtained which appellee termed allocated value and which was no greater or different than actual value. Instead of taking 70 percent of that amount in accordance with the resolution noted above, appellee declared the basic value of the property of appellant in Nebraska to be $112,435,495 which was exactly 95 percent of the allocated value.

In 1957 appellee, by the same items and procedure, determined what it termed in its order "system value" of the property of appellant in the amount of $468,361,700 and an "allocated value (Nebraska)" of the Nebraska property of appellant in the amount of $117,746,130. Ap-

pellee then stated the basic value was $111,858,825. That was 95 percent and not 70 percent of the $117,746,130 as the law required to arrive at basic value. This is obviously admitted by the reference in section IV of the 1958 assessment order of appellee in which it is said: "1957 Computed Value - 5%=Basic Value." This was clearly saying that 5 percent was deducted from the allocated value of 1957 which was the actual value of the Nebraska property for that year and the balance, 95 percent, was treated as basic value. The 1957 assessment was made on that erroneous basis. It is not important that appellee designated the $117,746,130 as allocated value because the factors used clearly show it was actual value.

Appellee substantially concedes that the basic value used in 1956 and 1957 was 95 percent of what is labeled by it as allocated value. Appellee could hardly do otherwise because simple arithmetic demonstrates it. The factors employed in composing allocated value establish that it was the actual value of the Nebraska property of appellant in the years 1956 and 1957. The market value of stocks and bonds, the earning power of the property, and the cost as shown by the investment account less proper depreciation evidence actual value. Appellee recognizes and, in fact, argues this in its brief when it says: "We submit that the authorities support the use of a cost factor, along with other factors in the determination of the value of a railroad for tax purposes."

There was no attempt by appellee in either 1956 or 1957 to state in the assessment order how or why it arbitrarily determined that the basic value was 95 percent of what was clearly the actual value of the Nebraska property of appellant while basic value of all other tangible property was established by the resolution of appellee at 70 percent of actual or market value. The omission was an obvious disregard and violation of the statute which required that appellee in making an

assessment of railroad property "shall set forth the manner in which it arrived at the assessment, the several items included in the total assessment and the manner of arriving at the several items and the total." § 77-609, R. R. S. 1943.

The value of the railroad system of appellant in 1958 was determined by appellee by the average of the same factors of value used in the preceding years as discussed above. Twenty-five percent thereof was allocated by the identical method formerly used for that purpose. That resulted in the sum of $113,548,106, designated by appellee as computed value for the Nebraska property and that was the same character of finding arrived at by the same method as had previously been considered and treated as the actual value of the Nebraska property of appellant. Appellee reduced that figure by 5 percent, multiplied the remainder by 1.429, and obtained $154,147,230 which it called actual value. At the time the assessment was made on July 8, 1958, appellee adopted a resolution which contained a recitation that "the method of determining the actual value of real estate and tangible personal property for the year 1958 used by all County Assessors is to convert 'basic value' for 1957 to actual value by multiplying the basic value by 1.429." Ironically, appellee also recited in the resolution that it was "convinced that railroad property should be valued at 35% of actual value as is all other tangible property" and at the identical time, as shown by the resolution, appellee valued and assessed the property of appellant in Nebraska at very much more than 35 percent of actual value because this property had not been valued and assessed at 70 percent of actual value in 1957 but at 95 percent of actual value and, notwithstanding this important fact, the conversion factor of 1.429 was applied to the value of the Nebraska property of appellant in 1958 as found by appellee to arrive at what it called actual value.

The 1959 assessment by appellee of the railroad of

appellant was made by the same method as the 1958 assessment was accomplished. The identical factors were employed for finding system value and for allocating 25.04 thereof, the average of the four factors used in previous years, which produced $112,974,922 which appellee called value allocated to Nebraska. Appellee reduced that amount by 5 percent or to $107,326,175 and multiplied that by 1.4286, 100 divided by 70 carried to the fourth decimal instead of 1.429 used by it in 1958, which resulted in $153,326,173 which appellee called actual value. The 35 percent statutory rate was applied to the last amount which produced, after deducting locally assessed property, an assessment for 1959 of the Nebraska property of appellant of $52,744,745.

The authority and obligation of appellee were to assess the property of appellant on the same basis as other tangible property is required to be assessed. §§ 77-601 and 77-604, R. R. S. 1943. All tangible property was required to be valued at its actual value and to be assessed for 35 percent of such actual value. § 77-201, R. R. S. 1943. Actual value as used in the revenue statute is defined by section 77-112, R. R. S. 1943. Appellee, by the procedure exhibited by the first three sections of the assessment order of 1959, substantially observed the requirements of this section of the statute. Section I a found the system value as evidenced by the selling price of the stocks and bonds of appellant, which responds to item (6) of the statute, "market value in the ordinary course of trade." Section I b found system value as evidenced by capitalizing the net operating railroad income, which is item (1), "earning capacity of the property." Section I c found system value as shown by investment account less deduction for physical and economical obsolescence, which appellee agrees is in lieu of item (4), "reproduction cost less depreciation." The remaining three items of the statute, "(2) relative location; (3) desirability and functional use"; and "(5) comparison with other properties of known or recog-

nized value," may be considered as included in market value and earning capacity to the extent they are applicable.

The assumption and the result of each of the three sentences of section IV of the assessment order of 1959 made by appellee are incorrect factually and are contrary to law. The 1957 or 1958 allocated value less 5 percent did not equal basic value or 70 percent of actual value as that formula assumed and stated. In the 1957 assessment instead of appellee taking 70 percent of allocated value as basic value it took 95 percent of allocated value as basic value. That error, resulting in over-assessment, was repeated and given effect by appellee to the prejudice of appellant as hereinbefore noted in the assessment of 1958. The error of the first sentence inheres in each of the other sentences of section IV.

There was no necessity of fact or justification of law for the resort by appellee to a reduction of 5 percent of the amount of the valuation allocated by it in 1959 to Nebraska or for the use by it of a multiplier or conversion factor in ascertaining the actual value of the property of appellant in Nebraska. The use of these was arbitrary and a violation of the statute defining actual value. The use of them disregarded the undisputed evidence that the actual value of the Nebraska property of appellant did not exceed $112,974,922, the amount appellee found and described as value allocated to Nebraska. Appellee found that the system value of appellant was $451,177,807. Included in this amount was every possible value of the railroad of appellant, including its franchise or its right to exist. Appellee made no attempt to demonstrate that there was any omission of anything of value from the schedule of the property of appellant furnished to appellee in 1959. It was accepted, acted upon without objection, and everything therein was valued and included in what appellee termed system value in its assessment order. Appellee belatedly now says in this court that the statute requires

it to assess railroad property "together with franchises"; that the record does not show that it made a separate valuation of franchises; and that it may be presumed it considered the element of franchise rights in arriving at actual value. This may be accepted if appellee means by actual value $112,974,922, designated as value allocated to Nebraska. Otherwise it is incorrect because franchise value was included in the assessment by use of the factors used by appellee to reach what is termed system value. The following from State ex rel. Bee Building Co. v. Savage, *supra,* fully explains the matter of franchise value in making such an assessment: "Where the property of a railroad corporation is assessed by the state board of equalization as a unit, and in fixing the value thereof the board takes into consideration the fact that the property is being used for effectuating the objects of the corporation, is earning an income in the transportation of passengers and carrying of freight for hire, and that such corporation is exercising the rights, powers and privileges of corporations organized for the purpose of engaging in business as common carriers, such assessment, so made, would include and cover the intangible as well as the tangible property of the corporation, and would be an assessment of its franchise."

The system value fixed by appellee of $451,177,807 is and must be accepted as the 1959 actual value of the entire railroad property of appellant. Any contention otherwise is only a play on words without evidentiary integrity or legal justification. The practice by appellee of reducing the value assigned to appellant in Nebraska by 5 percent originated in 1957. It is not set out or expressed in the assessment order of that year except as it results from the finding that the Nebraska property had a value for that year of $117,746,130 and that the basic value thereof was $111,858,825, or exactly 5 percent less than the total value first stated above. This practice and error reoccurred in 1958 and 1959. The deduc-

tion ·of 5 percent of the value assigned to Nebraska in each of those years was arbitrary and without explanation or any reason therefor given in the respective orders of assessment of appellee for those years. The reason suggested in this litigation by appellee that the allocated value "was 5% more than basic value" is not convincing. Appellee had fixed basic value at 70 percent of actual value of all tangible property for taxation purposes. The allocated value assigned to the Nebraska property was a finding of actual value of the property by all the applicable evidence in the record. If it was not, the appellee did not in any of these years find what the actual value of the property was in which event it had no basis for finding the basic value of it. Appellee deducted 5 percent of the value allocated to Nebraska and called it basic value when it should have deducted 30 percent to arrive at basic value according to the order fixing the ratio of basic value to actual value. The indulgence of appellee in making an unexplained 5 percent deduction from the value of the property to be assessed and in resorting to such terms as "system value," "computed allocated value," and to an inappropriate and incorrect conversion factor when its primary inquiry mandated by the Legislature was only to find actual value of the property to be assessed was a resort to fictions. A fiction is not allowed to obscure the facts when the facts become important. The important facts which the fictions tended to obscure in 1958 and 1959 were that in 1956 and 1957 appellee took 95 percent of the actual value of the Nebraska property of appellant for basic value rather than 70 percent, which the law required, and based the assessment of the property thereon. Appellee then applied to the incorrect amounts found for those years a conversion factor of 1.429 in 1958 and 1.4286 in 1959 which was in any event only permissible when the actual basic value of the property had been fixed at 70 percent of actual value and thereby appellee added in 1959 a nonexistent amount of

more than $40 million to the actual value of the property of appellant in this state.

Appellee assigned 25.04 percent of the total value of the railroad as found by it of. $451,177,807 to the Nebraska property of appellant. This allocation is uncontested. The amount of it is $112,974,922. That is the actual value of the property in 1959 concerned in this litigation and the duty of appellee was to assess it at 35 percent. §§ 77-201 and 77-604, R. R. S. 1943.

The action of appellee in inflating the value of the Nebraska property of appellant to $153,326,173 by the devices it used was arbitrary and unreasonable. It is conceded by the parties that 25.04 percent was the value of the railroad system in Nebraska. On the basis of those figures, when properly projected, there is produced an actual value of more than $612 million for the entire railroad. This is more than $225 million in excess of what appellee found all of the outstanding stocks, bonds, and equipment obligations were worth at market prices. The assessment is in defiance of that recognized standard of value. This court has said that a consideration of the value of the stocks and bonds of a solvent railroad is a fair method of ascertaining its value. Chicago, St. P., M. & O. Ry. Co. v. State Board of Equalization, *supra*. It is about $200 million in excess of the valuation found by appellee by capitalizing $24,891,083, the net operating income of appellant averaged for 5 years, as prescribed by the Interstate Commerce Commission. The earnings of a railroad are evidence of a most important character in determining the value of the railroad. State ex rel. Bee Building Co. v. Savage, *supra;* Chicago, R. I. & P. Ry. Co. v. State, *supra.*

The three items or factors used by appellee to arrive at the total value of the railroad property produced an actual value of $112,974,922 for the Nebraska property and that is more than $40 million less than the alleged actual value upon which the assessment is based. Appellee destroyed any trace of reasonableness or

realism by deducting 5 percent from that amount and multiplying the remainder by 1.4286 to produce a value of $153,326,173 which appellee called the actual value of the Nebraska property.

The original assessment order of July 15, 1959, was adopted by only two members of the board voting for it. One member voted against it, one member abstained from voting, and one member was absent. The use of the matter contained in section IV of the order of assessment was not a mistake, an inadvertence, or because of insufficient information. It was done advisedly and arbitrarily. The Tax Commissioner of the state advised against the use of it and presented a proposed order of assessment wholly eliminating that formula. The Tax Commissioner advised appellee that the facts and the law required a reduction in railroad valuations for assessment purposes. One of the members who voted for the assessment order as it exists for 1959 said in a voluntary, formal statement he would never be a party to extending the type of relief suggested to any special interest at the unavoidable tax expense of Nebraska farmers, main street merchants, and homeowners. However, the same statement tacitly conceded that railroad property had been overassessed and this was illustrated by a reference to 1955 when the "valuation should have declined because of the change in base, it actually increased 5 million dollars." The other member who supported the 1959 assessment order said he opposed any concessions to any special interest group when the average taxpayer would have to make up the difference from his own pocket. Neither of these members mentioned anything concerning the value of the property to be assessed nor did they undertake to show where the judgment of the Tax Commissioner was wrong. After the views of the two members were expressed as indicated above the Tax Commissioner stated that appellee had no right to consider such an effect among taxpayers and that its only right and duty were to make an as-

sessment of railroads at the same level as all other assessments. He said if appellee was to refuse to reduce values because other taxpayers will make up the difference, then no taxpayer, whatever his status or station, could ever get relief from unjust taxation. The observations in Cumberland Coal Co. v. Board of Revision of Tax Assessments, 284 U. S. 23, 52 S. Ct. 48, 76 L. Ed. 146, are appropriate: "The case is not one of mere errors in judgment in following a proper method, * * * but one where the challenged discrimination resulted from a plan of assessment which was none the less systematic and intentional because of belief in its validity." The record justifies the conclusion that the 1959 assessment of the Nebraska property of appellant is, in the respects discussed above, arbitrary and capricious.

Laflin v. State Board of Equalization & Assessment, 156 Neb. 427, 56 N. W. 2d 469, contains the following: "It is the duty of the Board to fix the value of farm lands and improvements at their actual value at the time they are appraised for assessment purposes. Any attempt to depart from this provision of the statute * * * constitutes a noncompliance with legislative direction. * * * The record shows on its face that the Board did not value farm lands and improvements for assessment in the various counties on the basis of the actual value, their value in the market * * *. This being so, the final orders of the Board are in violation of the positive directions of applicable statutes * * *. We are of the opinion that appellant's appealable interest lies in the fact that the record shows that farm lands and improvements in the various counties in the state are not assessed at actual value as defined by the statute and that there has been no uniformity of assessment between the various counties of the state under the formula used by the Board even if such formula could be assumed to correctly represent the actual value of this class of property throughout the state. Under such circumstances the final order of the Board is not in compliance with law

and must be deemed to be an arbitrary valuation of this class of property."

K-K Appliance Co. v. Board of Equalization, 165 Neb. 547, 86 N. W. 2d 381, presented a situation similar to this. The assessor in that case raised the value of the stock of merchandise a substantial amount. The basis for the raise was a count made of the various appliances involved and an examination of advertisements in certain newspapers. No attempt was made to ascertain the model, quality, or other pertinent facts for comparative purposes. The order of assessment was set aside. The opinion states: "If it be shown that the method employed was in fact arbitrary or speculative, having no real relation to the value of the property being assesssed, it will not sustain the valuation thus fixed, and renders any raise in the assessment based exclusively thereon entirely void. * * * A casual examination of the method employed by the county assessor in fixing the actual value of plaintiff's stock of merchandise shows its want of reasonableness in the accomplishment of this result. The yardstick employed was purely an arbitrary one which lacked many vital elements for determining actual value. Any resemblance to actual value resulting from its use would be nothing more than sheer coincidence. Valuations of property for tax purposes cannot be supported by such evidence. We necessarily hold that the raising of the basic value of the property contained in plaintiff's inventory is arbitrary and void, and cannot be sustained."

In Matzke v. Board of Equalization, 167 Neb. 875, 95 N. W. 2d 61, the contested assessment was based on an actual valuation of $28,685. The evidence of the owner established an actual value of $15,500. The assessment was arrived at by taking 52 percent of the replacement cost of $94,881 or $45,542, from which 40 percent was deducted for functional depreciation, leaving a balance of $27,325 as the actual value of the building and $1,360 for the land. The useful life of the building was 50

years. In condemning this method of assessment this court said: "There is no showing in the record to explain or justify a physical depreciation of only 52 percent on a 43-year-old building with a useful expectancy of 50 years. The physical depreciation of the building by 52 percent was the result of arbitrary action by the county board of equalization. * * * The only basis in the record on which the building could be depreciated on account of age produces a depreciated value, under the formula employed, which would result in an actual value less than $15,500, the actual value established by the plaintiffs. * * * In Newman v. County of Dawson, *supra* (167 Neb. 666, 94 N. W. 2d 47), we approved a formula for determining the value of tangible property for taxation purposes where it was shown to comply substantially with section 77-112, R. S. Supp., 1955 * * *. But where the formula applied requires the use of an arbitrary figure to arrive at a result, the result is as arbitrary as the figure itself. * * * A formula for determining the value of tangible property for taxation purposes must tend to produce the result required by section 77-112, R. S. Supp., 1955, when applied uniformly and impartially. Where it appears that an arbitrary basis is used which is not uniformly applied to all tangible property the result is an arbitrary one. It will not sustain a valuation for tax purposes."

In Adams v. Board of Equalization, 168 Neb. 286, 95 N. W. 2d 627, this court accepted evidence of value presented by the taxpayer as actual value of the property involved because the evidence showed that the assessment was based on a computation of 74 percent of replacement cost less 6 percent as basic value when the basic value had been determined to be 70 percent of actual or market value. The assessment was set aside. The opinion contains the following: "He said he applied to the replacement cost the depreciation listed in the manual which was 6 percent, a purely arbitrary percentage, and this resulted in a figure of $30,360 which

was described as the physical value. The result was necessarily an arbitrary one. There is no evidence to justify the deduction or depreciation of 6 percent of the alleged replacement cost. That deduction supports an inference that the replacement cost was neither the actual nor fair market value."

The method employed by appellee in assessing the property of appellant in Nebraska as exhibited by section IV of its assessment order of 1959 resulted in the assessment of the property at 47½ percent of its actual value as found by appellee and described in the order as value allocated to Nebraska. The facts of the assessment may be correctly and simply stated as follows:

| | |
|---|---:|
| Actual value | $112,974,922 |
| Assessment | 47½% |
| | 53,664,160 |
| Less local assessment | 919,415 |
| 1959 State Board assessment | $ 52,744,745 |

All tangible property has since September 20, 1957, been required to be valued at its actual value and to be assessed at 35 percent of such actual value. § 77-201, R. R. S. 1943. The evidence establishes that all tangible property except railroad property was assessed at not more than 35 percent of its actual value. It is not important in the circumstances of this litigation that some tangible property other than railroad property was assessed for less than 35 percent of its actual value. The Constitution provides that taxes shall be levied by valuation uniformly and proportionately upon all tangible property, subject to exceptions not important to this case. Art. VIII, § 1, Constitution of Nebraska.

State ex rel. Bee Building Co. v. Savage, *supra*, contains this language: "And this rule of uniformity applies not only to the rate of taxation but as well to the valuation of property for the purposes of raising revenue. * * * From the foregoing it is altogether clear

that in the discharge of the duties incumbent on the state board of equalization as an assessing board it was the duty of the members thereof, or a majority of them, to, in the manner and by the methods pointed out by the legislature, ascertain the fair and reasonable value of all of the properties of whatsoever kind owned by the corporations subject to taxes in this state, which it was their duty to assess, and to value such properties for the purposes of taxation so that the owners thereof should be required to pay a tax in proportion to the value of their property uniform, so nearly as was practicable, with the standard of values generally placed on all other species of property throughout the state, which is assessed by the different assessing officers selected for that purpose in the manner provided by law. It would be unfair to the railroad corporations to assess their properties in this state at a greater valuation than that which prevails in the assessment of property generally * * *."

In Chicago, R. I. & P. Ry. Co. v. State, *supra*, this court said: "To assess one class of property at 68 per cent. to 75 per cent. of its actual cash value, and to value the property of another taxpayer at 100 per cent. of its actual cash value, constitutes an unlawful discrimination, which is prohibited by the Constitution and statutes of the state."

Laflin v. State Board of Equalization & Assessment, *supra*, in speaking of the function of the State Board of Equalization and Assessment, said: "In so doing (assessing property at its actual value), the objective is not only to assess taxable property at its actual value but also to secure a uniform and proportionate valuation for taxation purposes as required by Article VIII, section 1, Constitution of Nebraska."

Greene v. Louisville & I. R. R. Co., 244 U. S. 499, 37 S. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E 88, states: "Discrimination resulting from an assessment of the intangible property of a railroad corporation by the

Board of Valuation and Assessment at 75 per cent. of its actual value while the property of individuals and other classes of corporations, taxed at the same rate, is generally and systematically assessed * * * at not more than 60 per cent. of actual value, is violative of the provisions of the Kentucky Constitution requiring uniform taxation in proportion to value and an identical rate as between corporate and individual property * * *; and this has been recognized by the Supreme Court of the State."

The court said in City Ry. Co. v. Beard, 283 F. 313: "Where a state Constitution provides that all taxable property shall be assessed by a uniform rule at its true value in money, if that rule is not observed, and the basis of valuation is 60 per cent., or any per cent. less than 100, the courts will grant relief to those whose property is rated in excess of the adopted percentage."

Sioux City Bridge Co. v. Dakota County, 260 U. S. 441, 43 S. Ct. 190, 67 L. Ed. 340, 28 A. L. R. 979, reversed the determination of this court (105 Neb. 843, 182 N. W. 485) that a taxpayer whose property was assessed at 100 percent of its value and property generally was assessed substantially at less value, had no remedy except to urge upon public authorities the duty of raising the other property valuation up to the level of the complainant. It is therein stated: "This Court holds that the right of the taxpayer whose property alone is taxed at 100 per cent. of its true value is to have his assessment reduced to the percentage of that value at which others are taxed even though this is a departure from the requirement of statute. The conclusion is based on the principle that where it is impossible to secure both the standard of the true value, and the uniformity and equality required by law, the latter requirement is to be preferred as the just and ultimate purpose of the law."

Cumberland Coal Co. v. Board of Revision of Tax Assessments, *supra,* referred to the case last quoted and said: "In applying this principle, the fact that a uni-

form percentage of assigned values is used, cannot be regarded as important, if, in assigning the values to which the percentage is applied, a system is deliberately adopted which ignores differences in actual values so that property in the same class as that of the complaining taxpayer is valued at the same figure (according to the unit of valuation, as, for example, an acre) as the property of other owners which has an actual value admittedly higher. Applying the same ratio to the same assigned values, when the actual values differ, creates the same disparity in effect as applying a different ratio to actual values when the latter are the same."

Schleman v. Connecticut General Life Ins. Co., 151 Fla. 96, 9 So. 2d 197, states: "Valuations for taxation must have a just relation to real value of the assessed property, and there must be no substantial inequality in valuation in various kinds of taxable property, and if steps required to be taken in making valuations are not actually taken in good faith, the valuations are shown to be essentially unequal, abstractly or relatively, the assessment is invalid."

It is said in People ex rel. McDonough v. Illinois C. R. R. Co., 355 Ill. 605, 190 N. E. 82: "Where taxing authorities in assessing property for taxation take an assessed value below the actual cash value of the property the constitutional rule of uniformity in taxation must be observed, and the tax commission, having knowledge of the percentage of actual value taken for assessment purposes throughout the State, cannot assess the property of a railroad company at a greater per cent of its actual value than that at which other property is assessed."

In Pacific Telephone & Telegraph Co. v. Wooster, 178 Wash. 180, 34 P. 2d 451, the court said: "* * * the evidence is conclusive that the so-called equalized valuation will raise the assessed valuation of each of respondent's parcels of real estate * * * seventeen per cent above the assessed valuation of land similarly situated * * *

throughout the county. It seems too plain for argument that to pick out the property of a particular owner and raise the assessed valuation of his property substantially above the assessed valuation of property of a like character similarly situated, violates the uniformity and equality provision of article VII, § 2, of the state constitution. * * * If the basis of valuation is the true market value of the property, then that basis must be applied to all alike. If the basis is a certain per cent of the true market value, the same percentage must be applied to all alike."

In People ex rel. Miller v. Chicago B. & Q. R. R. Co., 300 Ill. 399, 133 N. E. 325, the court said: "It has been held by this court that taxing authorities have no justification in withdrawing any property from the protection of the constitutional principle of uniformity of taxation, as uniformity of taxation is required under the constitution, and that a person cannot be compelled to pay a greater proportion of taxes, according to the value of his property, than another property owner. * * * While it is true that error in the exercise of an honest judgment in fixing the value of property will not invalidate the tax, it is also true that an arbitrary violation of the rule of uniformity is an invasion of constitutional right and will not be tolerated * * *."

The difference between 47½ percent and 35 percent when applied to the very large valuation involved in this case is not substantial or approximate uniformity as contended by appellee and as required by the Constitution and the applicable statute of the state. Appellee applied the percentage of 1.4286 to 95 percent of the actual value of the railroad property and to 70 percent of the actual value of other tangible property. The fact that a uniform percentage was used is not important. The discrimination between railroad property and other tangible property and the overvaluation of the former resulted from the deliberate act of appellee refusing to apply the conversion factor to the same basic valuation.

As a result of such discrimination in the use of the conversion factor alone, apart from any other formula error, the property of appellant is assessed at 47½ percent of its actual value and other tangible property is assessed at or not more than 35 percent of its actual value. The circumstances of this case, as discussed in the foregoing, characterize the assessment of the Nebraska property of appellant for 1959 as arbitrary, unreasonable, and discriminatory.

An assignment by appellant is that appellee erred in its computation of the value of the system property of appellant as evidenced by the investment account by deducting less than 20 percent therefrom for physical and economic obsolescence resulting in the sum of $559,526,-216 for the system property when the evidence establishes without dispute that not less than 40 percent should be deducted because of obsolescence; that would result in a value based on the investment account of $413,315,765 for the system railroad property; and that appellee was wrong in using the larger amount in its computation of the value of the Nebraska property of appellant.

This challenge is not available to appellant in this case. The complaint of appellant objecting to the assessment of its 1959 property in Nebraska by appellee alleged that by accepted, recognized, lawful, and proper methods the total actual value of the property of appellant was computed by appellee and a fair and just proportion of such system value resulted in the sum of $112,974,922 as the value of the Nebraska property of appellant; and that instead of appellee fixing the assessed value of the property at 35 percent of the value assigned to Nebraska as required by law, which would have resulted in an assessment of $38,621,807 after deduction of locally assessed property, appellee arbitrarily, unreasonably, and erroneously deducted 5 percent therefrom and multiplied the remainder by 1.4286 to obtain the sum of $153,326,173 which it termed the actual value of the

property in Nebraska. This resulted in an unlawful and discriminatory assessment of $52,744,745 after deduction of locally assessed property when it should have been assessed in the sum of $38,621,807. The assessment made by appellee was $14,122,938 in excess of a lawful, just, and proper assessment. Appellant by its complaint asked appellee to set aside its assessment and fix the assessed value of the property of appellant in Nebraska for 1959 in the sum of $38,621,807 as required by law. This was in compliance with the requirements of the statute that the assessment could be contested by appellant filing with appellee a complaint stating wherein it complained the assessment was unjust, stating the amount appellant claimed it should be, the excess therein, and asking appellee for an adjustment in the assessment. § 77-612, R. R. S. 1943.

A prerequisite of an appeal by appellant was a notice within 10 days of the assessment to appellee stating that an appeal was to be taken to this court from the assessment, the amount appellant claimed the assessment should be, and the amount of the excess. § 77-613, R. R. S. 1943. The notice of appeal of appellant said the assessment of its property in Nebraska ought to be the sum of $38,621,807 and the assessment thereof by appellee was $14,122,938 in excess of that amount.

An assignment of error in this court by appellant is that appellee erred in not vacating its assessment of $52,744,745 of the 1959 Nebraska property of appellant and in not assessing the property in the sum of $38,621,-807, which, obviously, would have required a valuation of the Nebraska property in the sum of $112,974,922.

The taking of an appeal by appellant required appellee to make a return to the respective county clerks of the counties in which any portion of the railroad property was located, stating the amount of the assessment made by appellee and the amount appellant claimed it was in excess of the true value. Thereupon the taxing boards of the respective counties were authorized to

levy and collect taxes under the assessment against the railroad property upon the uncontested value of the assessment. § 77-619, R. R. S. 1943. Appellant stated at the submission of this case that levies are being extended and taxes collected on the uncontested part of the assessment of $38,621,807.

Appellant, as is obvious from the foregoing, repeatedly asserted that its Nebraska property in 1959 had an actual value of $112,974,922. Included in the computation by which that value was ascertained was the amount of investment in transportation property as depreciated. Appellant by its statements and acts above referred to agreed that the procedure of appellee was correct in that respect and that it produced a correct result. It was only the increased amount produced by deducting 5 percent from the actual value of the property and using the conversion factor to which appellant objected. Appellant may not now claim inconsistently with its previous position that the use of the investment account as one factor in arriving at the Nebraska property was wrong and thereby attempt to secure an additional reduced valuation of its Nebraska property.

Jensen v. Omaha Public Power Dist., 159 Neb. 277, 66 N. W. 2d 591, contains the following: "The rule seems to be: 'Subject to modifications and limitations which will appear (none of which are present in the present case), it is a well established principle that a party who has knowingly and deliberately assumed a particular position in judicial proceedings is estopped to assume a position inconsistent therewith to the prejudice of the adverse party. * * *'" 31 C. J. S., Estoppel, § 117, p. 372."

It is also stated in 31 C. J. S., Estoppel, § 117, p. 375: "It is frequently held that estoppel against inconsistent positions in judicial proceedings will operate where the position first assumed has been successfully maintained. * * * It follows that there may be an estoppel

where there has been no judicial determination of the merits of the initial position. Thus, before any determination has been reached as to the position first taken, and while still relying thereon, a party cannot also rely on an inconsistent position * * *." See, also, Cozad Ditch Co. v. Central Nebraska Public Power & Irr. Dist., 132 Neb. 547, 272 N. W. 560; Peterson v. Strayer, 121 Neb. 587, 237 N. W. 667, on rehearing, 121 Neb. 866, 239 N. W. 213; In re Estate of Nilson, 126 Neb. 541, 253 N. W. 675; Blid v. Blid, 82 Neb. 294, 117 N. W. 700; Kirkendall v. Weatherley, 77 Neb. 421, 109 N. W. 757, 9 L. R. A. N. S. 515; 19 Am. Jur., Estoppel, § 50, p. 650, § 72, p. 704.

The findings of appellee contained in sections I, II, and III of its assessment order of July 15, 1959, concerning the property of appellant are correct and they are each adopted by this court.

The assessment of the 1959 property of appellant in Nebraska as contained in section IV of the assessment order of appellee of July 15, 1959, should be and it is hereby reversed.

It should be and is adjudged that the actual value of the property of appellant for 1959 in Nebraska is the sum of $112,974,922; that from 35 percent thereof or $39,541,222 there should be deducted the value of the locally assessed property of appellant the sum of $919,-415; and that the 1959 assessment of the property of appellant in Nebraska should be and is $38,621,807.

ORDER REVERSED. JUDGMENT OF
ASSESSMENT RENDERED.